JOSEPH ROVINSKY *vs.* NORTHERN ASSURANCE COMPANY.

SAME

*vs.*

FIRE INSURANCE COMPANY OF THE COUNTY OF PHILADELPHIA.

. Oxford.    Opinion March 29, 1905.

*Fire Insurance.   Fraud.   False Swearing.   False and Excessive Valuation.*
*Forfeiture.   Incredible Evidence.*

If a plaintiff falsely and knowingly inserts in his sworn schedule of loss, as burned, any single article which in fact was not in the house or was not burned, this would constitute a fraud on the company, and such plaintiff cannot recover anything on his policy.

If a plaintiff knowingly puts a false and excessive valuation on any single article, or puts such false and excessive valuation on the whole as displays a reckless and dishonest disregard of the truth in regard to the extent of the loss, such knowing over-valuation is itself fraudulent and such plaintiff cannot recover at all.

It is true that in the case at bar, the plaintiff and his wife gave positive evidence in support of their claim but it is in itself so unreasonable and incredible and so overborne by established facts and circumstances that the court would not be justified in accepting it as the basis of a decision. Mere words are not necessarily proof, and courts are not compelled to allow justice to be perverted because incredible evidence is not contradicted by direct and positive testimony.   Such cases call for the supervisory power of the court.

On motion and exceptions by defendants.

Motion sustained.    Exceptions not considered.

Assumpsit upon fire insurance policies.    The two actions were tried together.    Plaintiff recovered a verdict for $526.50 in the first action, and for $1,053.00 in the second action.    Defendants filed general motions for a new trial and also filed certain exceptions.    The exceptions were not considered.

The material facts are sufficiently stated in the opinon.

*John P. Swasey*, for plaintiff.

*Leslie C. Cornish and Norman L Bassett*, for defendants.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, SAVAGE, POWERS, SPEAR, JJ.

WHITEHOUSE, J. The plaintiff had $1500 insurance on his household goods, furniture and wearing apparel, in a small house at Rumford Falls, owned by J. W. Withee. The house was not greatly damaged by the fire, but the plaintiff's schedule of loss on his personal property, amounted in the aggregate to $2076.00.

The defendants contended in the first place that the fire was set either by the direct act of the plaintiff or by his procurement. Secondly, it was contended, that the plaintiff attempted a fraud upon the companies in his "proof of loss," first, by knowingly including in his schedule numerous valuable articles not in the house at the time of the fire and not destroyed, and secondly, by knowingly placing an excessive and fraudulent valuation on numerous other articles in his schedule.

It may be conceded that the suspicious facts and circumstances tending to show an apparent preparation for a fire and to establish the fact of its incendiary origin, are not sufficiently conclusive to warrant a judicial finding that the fire was intentionally set for the purpose of defrauding the companies; but in the light of these facts and circumstances, the true color of much of the evidence relating to the proof of loss may be more clearly seen.

The fire occurred Oct. 10, 1902, at 4 o'clock in the morning. There was no person in the house at the time. The plaintiff's wife, to whom he had been married about a year left two weeks before for a visit to her parents in Montreal. The two roomers who occupied a chamber in the house some part of the time had left, one before the departure of the wife, and one a few days after. The plaintiff was stopping that night at his father's house on another street.

The plaintiff's house consisted of three small rooms below, parlor, dining room and kitchen, and three chambers above. The single chimney in the house was so located as to receive funnels from each lower room and also from the hallway above; but for several months before the fire only the kitchen stove had been set up for use. Next to the chimney there was a dining room closet 36 inches wide and

17 inches deep.    The plaintiff says he built or attempted to build a
coal fire in the kitchen stove about 8 o'clock in the evening before
the fire broke out at 4 o'clock in the morning, although he did not
intend to sleep there that night.    He says he built it in the ordinary
way, closed the drafts and left everything all right when he went
home between 9 and 10 o'clock.    But this attempt to build a coal
fire was manifestly unsuccessful and the unburned coal found the
next day in the kitchen stove and the absence of any defect in the
chimney before the fire afforded an apparent refutation of the theory
that the fire was caused by an overheated stove.

The fire was promptly extinguished, and it appears to have been
confined to the central part of the house near the chimney and to this
dining room closet.    The paper and excelsior raked out of the debris
at the bottom of· this closet with the odor of kerosene upon them had
great significance respecting the probable origin of the fire.    The
plaintiff's evidence relating to contents of a small sheet iron stove
which fell from a closet above and a can of kerosene carried up stairs
to fill lamps in a house lighted by electricity does not satisfactorily
explain the conditions existing at the bottom of this closet.    The
extent and character of the house furnishings existing outside of this
small closet could be for the most part readily discovered after the
fire; and the evidence shows that the house alleged to have contained
more than $2000 worth of goods and apparel had been stripped of
all its most valuable furnishings and ornaments and was in no con-
dition for Mrs. Rovinsky to resume housekeeping after her two weeks
visit with her parents in Montreal.

(1)    All the evidence tending more directly to show fraud in the
plaintiff's proof of loss considered in connection with these facts and
circumstances and with the plaintiff's improbable explanation is
utterly irreconcilable, with the plaintiff's theory.

In the first place, the conclusion is irresistible that the plaintiff's
schedule of loss embraced articles not in the house at the time of the
fire.    It includes at least 26 articles of clothing of the alleged value
of $973.00 claimed to have been hung in this dining room closet 36
inches by 17 inches in size.    Among these are a Persian lamb coat,
valued at $250, a gray lamb coat at $90.00, a satin dress valued at

$125.00, a black silk dress at $75.00, a reception dress at $40.00, one silk tea gown at $17.00, one silk waist at $15.00, one silk waist $12.00, one overcoat $35.00, a wedding suit $30.00, one I. O. O. F. uniform, $35.00, and a silk umbrella $4.00. It is unreasonable that these furs should have been taken out of their summer packing in September. It is utterly improbable that if taken out, they should have been hung in this little dining room closet intended for dishes and not for clothes and unprovided with hooks, in preference to the spacious closet 5 feet by 3½ feet opening out of Mrs. Rovinsky's own chamber which was found to contain only one old skirt and an old coat. It is incredible that she should have made this first visit to her old home after her marriage without taking with her at least such part of this fine apparel as was appropriate to the season. It is claimed on part of the plaintiff that she took with her only a dress suit case, but the weight of reliable evidence discloses the fact that two trunks left this house the day of her departure and that these were not the trunks of the roomers. If it were possible that all of those articles could have been packed in such a closet, it is utterly improbable that they should have been wholly consumed by a fire so promptly extinguished. The floor of the closet was not burned and the wooden door on which some of the clothes were said to have been hung was only burned at the top and still turned on its hinges. No identifying relics, either buttons, hooks, umbrella wires or other metallic attachments could be found in the debris.

Again in addition to the pictures valued at $123.00, and the mirror at $48.00, the schedule comprises items of silverware, and fancy articles of the alleged value of $239.00, in regard to which, the plaintiff's evidence is equally contrary to reason and probability.

The inference is that if all these articles were ever in the house, the most of them had been removed and were not there at the time of the fire.

(2)    The evidence showing a fraudulent over-valuation is still more positive and convincing. The law governing both of these propositions is settled in this state in *Dolloff* v. *Insurance Co.*, 82 Maine, 267. " If the plaintiff falsely and knowingly inserted in his sworn schedule of loss, as burned, any single article which in fact was not

in the house, or was not burned, this would constitute a fraud on the company and the plaintiff cannot recover anything on his policy. If the plaintiff knowingly put a false and excessive valuation on any single article, or put such false and excessive valuation on the whole as displays a reckless and dishonest disregard of the truth in regard to the extent of the loss, such knowing over-valuation is itself fraudulent and the plaintiff cannot recover at all." The charitable considerations applied in *Hanscom* v. *Ins. Co.*, 90 Maine, 335, utterly fail to explain or excuse the remarkable schedule presented in this case. The whole amount of the goods purchased of the Atherton Co., the year before, to furnish the entire house, was $325.00, at the prices then charged for goods sold on the installment plan, the plaintiff paying $60.00 at the time of the purchase. These were put into the schedule at $484.00 an increase of $159.00. The plaintiff's lease of these goods specifying the value of each item was doubtless in his possession after the fire. The evidence to the contrary is improbable and unreliable. The order in which he stated the items in his schedule of loss corresponds to that in the lease too closely to be the result of chance. He must have had access either to the original lease or to the town record in which the lease was recorded. The price of the velvet carpet appears to have been raised from $31.50 to $70.00. This appeared to be such a glaring instance of over-valuation that the plaintiff deemed it specially necessary to explain that this particular velvet carpet, precisely 28 yards, was a gift from his father and that he had turned the Atherton carpet over to his father in exchange. But it would seem from the evidence that he must have had notice of the gift from his father before the receipt of the Atherton goods and that he had abundant opportunity to countermand the Atherton order.

But the plaintiff proffers the further excuse for his over-valuations that the prices had been practically fixed by Mr. Forbush, the special agent of the company. The facts show, however, that this excuse is equally devoid of merit. It appears from the plaintiff's own testimony that the proof of loss was explained to him by the defendants special agent; that he was informed that if he was doubtful about the value of anything he should state it as nearly as he could; and that he

understood when he made oath to it that he was swearing that he had all of those articles in the house and that they were of the value which he gave them.

Thus it clearly appears that the plaintiff did not prepare this schedule and give this testimony under the embarassment which the ordinary householder would experience in attempting to recall specifically a multitude of articles purchased separately, many years before, or to give his judgment or opinion in regard to the exact value of those not purchased by him. The exact prices were here readily accessible, if not actually before his eyes; and the conclusion is irresistible that he wilfully refused to avail himself of the information and knowingly made false statements in regard to the values.

It is true that the plaintiff and his wife gave positive evidence in support of their claim but it is in itself so unreasonable and incredible and so overborne by established facts and circumstances that the court would not be justified in accepting it as the basis of a decision. Mere words are not necessarily proof, and courts are not compelled to allow justice to be perverted because incredible evidence is not contradicted by direct and positive testimony. These cases call for the exercise of the supervisory power of the court.

*Verdicts set aside.     New trial granted.*