## D. C. Ledford et al., Appellees, v. The Hartford Fire Insurance Company, Appellant.

1. INSURANCE—*effect of making fraudulent proofs of loss.* Where a policy contains a stipulation to the effect that it shall be void in case of any fraud or false swearing by the insured touching any matter relating to the insurance whether before or after loss, a false statement under oath knowingly and purposely made by the assured for the purpose of procuring falsely excessive valuation of the property lost, causes a forfeiture of all claims under the policy and prevents a recovery thereunder by the assured.

2. VERDICTS—*when not disturbed.* The Appellate Court is slow to set aside a verdict where two juries have found the same way in the cause.

3. INSTRUCTIONS—*what phrase need not be defined.* The phrase "greater weight of the evidence" is not so technical as to require explanation or elaboration. If a party desire that it be defined he may ask such definition by instructions tendered to the court.

4. INTEREST—*propriety of allowance in action upon insurance policy.* When the. amount of money named in an insurance policy becomes due it bears interest at the legal rate, and it is proper for the jury in fixing the amount of the verdict to allow such interest at five per cent per annum; and if the jury does this no complaint can be predicated upon the fact that the instructions given limited the jury to the allowance of five per cent interest on the amount found due.

Assumpsit. Appeal from the Circuit Court of Jackson county; the Hon. W. W. DUNCAN, Judge, presiding. Heard in this court at the October term, 1910. Affirmed. Opinion filed April 15, 1911.

BARCLAY, FAUNTLEROY & CULLEN and ANDREW S. CALDWELL, for appellant.

W. P. LIGHTFOOT, W. A. SCHWARTZ and JAMES H. MARTIN, for appellees.

MR. JUSTICE HIGBEE delivered the opinion of the court.

Appellees brought this suit in the Circuit Court of Jackson county, on an insurance policy issued by appellant, covering a stock of dry goods and groceries,

together with store fixtures in Carbondale, Illinois, where appellees were engaged in business as partners, which stock of goods and fixtures had been wholly destroyed by fire, while the policy was in force.

To the declaration appellant filed the general issue, and also four special pleas, alleging as matters of defense that appellees had made a false and fraudulent statement of their loss to appellant; that certain duplicate invoices of goods sold them procured by appellees after the fire had been fraudulently altered by them; that appellee Ledford had made a false statement of the loss under oath with intent to defraud and deceive appellant. Two juries have found the issues in favor of appellees. The first verdict was set aside by the trial court but the second, which was for $2359.70 was sustained by the court, a motion for a new trial overruled and judgment given for that amount.

The validity of the policy of insurance and the destruction of the goods and fixtures were not matters of controversy upon the trial and the only questions of fact raised by appellant, in this appeal, are those which concern the amount of the goods destroyed, the amount of the judgment and whether appellees were guilty of fraudulent acts and statements which rendered the policy void and not subject to collection. In fact while appellant's brief raises several questions, the whole of its argument is devoted to a consideration of the question whether the proofs show the alteration of the duplicate invoices by appellees or with their consent and whether appellee Ledford knowingly swore falsely to the statement.

The facts leading up to the issuance of the policy of insurance and the claim of loss under it, appeared from the evidence to be substantially as follows: About January 1, 1906, appellee, A. E. Hinchcliff, traded his interest in a farm to one J. B. Hester for a stock of goods and shortly afterwards bought another

stock from another person, the two stocks of goods invoicing about $3175 without the fixtures, which Hinchcliff also acquired. A little later appellee Ledford became associated with him and they carried on the general merchandise business under the firm name of Ledford and Hinchcliff. On January 26, 1906, the firm took out a fire insurance policy with appellant for the sum of $2000, of which $1500 covered on their stock of merchandise and $500 on furniture and fixtures. This policy was for the term of one year and is the one sued on in this cause. Besides the policy in question, appellees carried $4000 additional concurrent insurance on their stock in other insurance companies. On the morning of July 31, 1906, a fire broke out in the building occupied by appellees and destroyed the stock and fixtures insured. A few days later appellant and the other insurance companies interested, sent C. L. Whittemore to Carbondale as their representative, to adjust the loss. He having ascertained that their books and bills were destroyed in the fire, requested appellees to get duplicate bills of the merchandise purchased by them from the houses they had bought goods from since they commenced business, which they did; although he was informed that they had on hand an invoice of their stock made by them June 12, 1906.

Appellees testified that after the duplicate bills were received by them, a man calling himself W. C. Taffy came to them at Carbondale, representing that he was a ''people's adjuster'' and told them he could assist in making proof of loss and adjusting the insurance matters, in which they were wholly inexperienced; that with this in view they turned over to him all the duplicate bills just as received by them, together with the invoice of June 12, 1906; some of the invoices which had not been received when Taffy was in Carbondale were forwarded to him in St. Louis, Missouri; that afterwards on Saturday, August 25, Taffy sent

the papers back to appellees, writing them at the same
time that the papers were all right to show proof of
loss; that the papers when received by appellees were
not examined by them, but were placed in a safe in a
bank in Carbondale and afterwards turned over by
them as received to appellant's adjuster, Whittemore.
The latter retained them until the following afternoon
when he and Ledford went to the office of a notary
public, where Ledford signed and swore to a written
statement concerning the origin of the fire, amount of
loss and certain other matters connected with the fire.
To this statement, as a part of it, was attached a
summary of the two stocks purchased, by Hinchcliff,
all bills of goods which had been purchased by ap-
pellees and an estimate of their average sales, from
which was deducted a certain per cent for profits;
from all of which it appeared that the total amount
of stock on hand at the time of the fire amounted to
$9005.04. This statement, which was introduced in
evidence, shows upon its face that the sum of $1235.15,
estimated as the amount of sales from June 12 to
August 1, 1906, was deducted twice from the amount
of stock so that the statement should have shown as
the correct amount of stock lost, $10,240.19. After
the duplicate invoices had been turned over to Whitte-
more, he discovered, and it was conclusively shown
upon the trial and not contested by appellees, that the
various invoices which had been sent to appellees by
the firms with which they dealt, had nearly all of them
been changed or padded by raising the amounts named
in them. The changes as a whole caused the bills to
show an excess of $4671.33 over and above the actual
bills rendered appellees by the wholesale houses. Had
this fraudulent excess been deducted from the sum of
$10,240.19, which the statement sworn to should have
shown to be the amount of goods on hand, it would
have left a balance of $5,568.86 as the value of the
goods destroyed, not including the fixtures. Appellees'

invoice of June 12, 1906, showed the amount of stock to be $5,622.44, not including the fixtures, valued at $798.90, which approximately agrees with the correct conclusion of the summary or tabulated statement sworn to by Ledford.

The policy issued by appellant was a standard policy of the usual form and contained a provision that "this entire policy shall be void   *   *   *   in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss." This provision of the policy was a reasonable one and it has been decided by eminent authority that where a policy contains such a stipulation, a false statement under oath, knowingly and purposely made by the assured, for the purpose of procuring falsely excessive valuation of the property lost, shall cause a forfeiture of all claims under the policy and prevent a recovery thereunder by the assured. Dolloff v. Phoenix Ins. Co., 82 Me. 266; Rovinsky v. Northern Assur. Co., 100 Me. 112; Hiller Co. v. Ins. Co. of North America, 125 La. 938; Hall v. Underwriters Assn., 106 Mo. App. 476.

Appellant claims that appellees have lost their right of recovery in this case because Ledford swore to the statement of loss which included the false and padded invoices of goods sold to them by the wholesale houses, and this contention should be sustained if the proofs show that Ledford knew of the falsity of the padded invoices when he made his oath to the statement.

Appellees on the other hand claim that they turned the duplicate invoices over to the man named Taffy, who professed to be a "people's adjuster" and that after that they did not examine them again until they were turned over to Whittemore and sworn to by Ledford; that they were absolutely ignorant of the fact that the invoices had been padded; that the changes in the same were made without their knowledge or consent; that the affidavit was prepared by Whittemore who

told Ledford that it was all right to swear to it, that he had to base his claim on something and that it was under these representations and assurances that Ledford signed and swore to the affidavit.

Appellant also claims that the man Taffy is a myth and never had any actual existence and it appears that there is certain evidence that throws some suspicions both upon the existence and the alleged acts of the man. We have to do, however, with the proofs as a whole and from them it appears that both of appellees swore positively to the existence of the identity of the man Taffy and their employment of him in connection with their proofs of loss. There are also certain circumstances in proof, which seem to corroborate their testimony in this regard. They also swore positively that they knew absolutely nothing of the manner in which the invoices had been changed and that they did not authorize any such changed condition to be made. In addition to this proof, it also clearly appeared that appellees had a valid policy, for which they had paid the premium, issued by appellant upon their stock of goods and fixtures; that their stock and fixtures were wholly destroyed by fire during the life of the policy and that the total value of the stock after deducting all the false excess amounted to $5,568.86, which was $68.86 in excess of the total insurance carried upon the same in all companies, and that the value of the fixtures was about $798.90, being $298.90 in excess of the amount of insurance carried upon them. While the fact that the actual loss shown exceeded the whole amount of the insurance, would not of itself be a defense, if appellees had knowingly and purposely made the false statements under oath concerning the amount of their losses for the purpose of defrauding appellant, yet proof of such fact tends in some degree to corroborate the claims of appellees, that the changes in the invoices were made without their knowledge; and would also tend to show an

absence of motive for fraudulent padding of the invoices upon the part of appellees.

Two juries, with every opportunity of determining the credit to be given the testimony of witnesses, afforded by a trial at law, have believed the claims of appellees and found verdicts in their favor upon the facts and we fail to find in the record proofs which would justify us in remanding this cause for another trial upon the facts.

While appellant's argument discusses only the facts in the case, objections are made to certain of appellees' instructions, in its brief. Appellees' first instruction is said to be faulty for the reason that while it requires the plaintiffs to prove their case by the greater weight of the evidence, it fails to define what is meant by the term "greater weight of the evidence." While this phrase may be and often is the subject of explanation in instructions, where there is something in the case which may lead one side or the other to desire to give the jury special information upon the question, yet as ordinarily used the phrase is not so technical as to require explanation or elaboration.

Appellant further objects to an instruction given for appellees which authorized the jury in case they found appellees were entitled to recover to allow "five per cent interest on such amount so found." The criticism of this instruction is that it limited the amount of interest to five per cent on the principal amount and did not authorize the calculation of interest at the rate of five per cent per annum upon the principal amount which the jury really did. Our courts have held that after the amount of money named in an insurance policy becomes due it should draw the legal rate of interest and that it is proper for the jury in fixing the amount of the verdict to allow such interest. Peoria Marine and Fire Ins. Co. v. Lewis, 18 Ill. 553; Knickerbocker Ins. Co. v. Gould, 80 Ill. 388.

Section 9 of our statute upon interest provides, that

"whenever in any statute, act, deed, written or verbal contract * * * any certain rate of interest is or shall be mentioned and no period of time is stated for which such rate is to be calculated, interest shall be calculated at the rate mentioned by the year in the same manner as if 'per annum' or 'by the year' had been added to the rate."

Section 2 of the Interest Act also provides that "creditors shall be allowed to receive at the rate of five per centum per annum for all moneys after they become due on any bond, bill, promissory note or other instrument of writing." By the terms of the policy the amount of insurance was due sixty days after satisfactory proofs of loss were furnished and therefore if appellees had a right to recover in this case, they were entitled to recover, in addition to the amount of their loss, interest upon the same, at the rate of five per cent per annum from the time said amount fell due.

A consideration of the above authorities and statute of this state, lead us to the conclusion that the term "five per cent interest" as used in said instruction, should be held to mean interest at the rate of five per cent per annum and that the jury properly calculated the interest at that rate. We find no reversible error in this record and the judgment of the court will therefore be affirmed.

*Affirmed.*

MR. JUSTICE DUNCAN having tried the case in the court below took no part here.