STATE EX REL. BEATTIE, Respondent, vs. BOARD OF EDUCA-
TION OF THE CITY OF ANTIGO, Appellant.

*April 3—April 29, 1919.*

*Public schools: Exclusion of child whose presence is harmful: Pow-
ers of school board: Formal action: Interference by courts:
Burden of proof.*

1. The right of a child of school age to attend the public schools
   of this state cannot be insisted upon when his presence therein
   is harmful to the best interests of the school.
2. A board of education which, under the law, had "in all respects
   the supervision and management of the common schools" of a
   city, with power to make "rules and regulations for their or-
   ganization, government or instruction, . . . and the transfer
   of pupils from one department to another, and generally for
   their good order and advancement," had power, acting in good
   faith, to determine that, by reason of his physical condition
   and ailments, the presence of a boy in school was harmful to
   the school and to other pupils, and that therefore he should
   be excluded.
3. Such a determination by a school board should not be interfered
   with by the courts unless it is shown to have been illegal or
   unreasonable.
4. Although, in the first instance, the exclusion of the boy from
   the schools was not the result of action taken at a formal meet-
   ing of the board, yet, when the board at a subsequent regular
   meeting conferred upon the question whether he should be
   reinstated, and a motion that he be reinstated received no
   second, this amounted to a determination by the board, acting
   as such, that he be excluded.

   ESCHWEILER, J., dissents.

APPEAL from a judgment of the municipal court of Lang-
lade county: T. W. HOGAN, Judge.   *Reversed.*

This is an action of *mandamus* brought in the municipal
court of Langlade county to compel the *Board of Education
of the City of Antigo* to reinstate and admit petitioner's son
to the public schools of said city.   From a judgment in favor
of the petitioner the defendant *Board of Education* appealed.

Merritt Beattie, thirteen years of age on March 27, 1918,
son of petitioner, has been a resident of the city of Antigo

since he was two years of age.    Merritt has been a crippled
and defective child since his birth, being afflicted with a form
of paralysis which affects his whole physical and nervous
make-up.    He has not the normal use and control of his
voice, hands, feet, and body.    By reason of said paralysis
his vocal cords are afflicted.    He is slow and hesitating in
speech and has a peculiarly high, rasping, and disturbing
tone of voice, accompanied with uncontrollable facial con-
tortions, making it difficult for him to make himself under-
stood.    He also has an uncontrollable flow of saliva which
drools from his mouth on to his clothing and books, causing
him to present an unclean appearance.    He has a nervous
and excitable nature.    It is claimed on the part of the school
board that his physical condition and ailment produces a de-
pressing and nauseating effect upon the teachers and school
children; that by reason of his physical condition he takes up
an undue portion of the teacher's time and attention, dis-
tracts the attention of other pupils, and interferes generally
with the discipline and progress of the school.    He did not
walk until he was six or seven years of age and did not at-
tend school until he was eight years old.    He then entered
the first grade of the Antigo public school and continued
therein until he was through the fifth grade in 1917.    It
appears that he is normal mentally and that he kept pace with
the other pupils in the respective grades, although the teach-
ers had difficulty in understanding him, and he was not
called upon to recite as frequently as the others for the rea-
son that he was slow in speech, requiring more time for him
to recite than the other pupils.    The city of Antigo main-
tains a day school under sec. 41.01, Stats., "for the instruc-
tion of deaf persons or persons with defective speech."    In
the fall of 1916 he was placed by the school authorities in
this department.    He remained there five weeks, when he
was transferred to the Fourth Ward public school.    Dur-
ing the school year of 1916 and 1917 a representative of the
state department of public instruction visited the Antigo

State ex rel. Beattie v. Board of Education, 169 Wis. 231.

schools.　The boy Merritt came under her observation and she protested against his being in the public schools and suggested that he be placed in the department for instruction of deaf persons or persons with defective speech.　Merritt refused to attend this department, in which he was upheld by his parents and family.　At the beginning of the school year in 1917 Merritt presented himself to the Second Ward public school, but on the second day those in charge refused to accept him as a pupil.　The matter was taken by the parents to the superintendent of schools and finally laid before the *Board of Education.*　On September 13, 1917, the *Board of Education* had a regular meeting to consider the demand of the petitioner that his son be reinstated and admitted to the public schools.　The matter was considered for an hour, during which time one member of the board moved that the boy be reinstated in the schools.　This motion did not receive a second, and after some further discussion it was agreed that the matter should be presented to the state superintendent of public instruction.　It appears that correspondence followed between the secretary of the school board and the state superintendent upon the question as to whether Merritt should be reinstated, but it does not appear that the state superintendent ever definitely advised the school board upon the subject and the school board never reinstated the boy.　As above stated, the petitioner brought this action to compel his reinstatement.　The case was tried before a jury.　A general verdict in favor of the petitioner was returned.

For the appellant there was a brief by *Finucane & Avery* of Antigo, counsel, and oral argument by *Chas. H. Avery.*

For the respondent there was a brief by *Goodrick & Morson* of Antigo, and oral argument by *H. F. Morson* and *E. J. Goodrick.*

OWEN, J.　The right of a child of school age to attend the public schools of this state cannot be insisted upon when

its presence therein is harmful to the best interests of the school.  This, like other individual rights, must be subordinated to the general welfare.  It will be conceded, we think, that the foregoing statement of facts presents a fair question as to the effect of the boy's presence upon the school and the individual pupils attending the same.  The question then arises as to what body or tribunal is vested with the authority of determining the question.  The trial court seemed to be of the opinion that, while such authority rested with the school board in the first instance, its action in that behalf was reviewable by a jury and subordinate to the jury's opinion thereon, as indicated by its charge to the jury to the effect that "It is incumbent upon the defendant to prove to you the needfulness of the rule in denying Merritt Beattie the privileges of the graded school by a fair preponderance of the evidence."  The power of the school board in the premises is set forth in sub. 5, sec. 101, ch. 197 (vol. II), Laws 1889, as follows:

"To have in all respects the supervision and management of the common schools of said city, and from time to time, to make, alter, modify and repeal as they may deem expedient, rules and regulations for their organization, government or instruction, . . . and the transfer of pupils from one department to another, and generally for their good order and advancement."

The situation here presented aroused the power of the board under that provision of law.  Having acted, its determination should not be interfered with by the courts unless it acted illegally or unreasonably.  *State ex rel. Dresser v. District Board,* 135 Wis. 619, 116 N. W. 232; *Watson v. Cambridge,* 157 Mass. 561, 32 N. E. 864; *Kinzer v. Independent School Dist.* 129 Iowa, 441, 105 N. W. 686.  That it acted legally is without question.  That it acted unreasonably cannot be said.  The duty confronting the school board was a delicate one.  It was charged with the responsibility

of saying whether this boy should be denied a constitutional right because the exercise of that right would be harmful to the school and to the pupils attending the same.    He should not be excluded from the schools except for considerations affecting the general welfare.    But if his presence in school was detrimental to the best interests of the school, then the board could not, with due regard to their official oaths, refrain from excluding him, even though such action be displeasing and painful to them.    The record convinces us that the board took this view of the situation and considered the question with the highest motives and with a full appreciation of its responsibility.    There is no suggestion that any of the members were prompted by bad faith or considerations of ill will.    The action of the board in refusing to reinstate the boy seems to have been the result of its best judgment exercised in good faith and the record discloses no grounds for the interference of courts with its action.

There is one other question which should be noticed.    It is claimed that the school board never acted as a body upon the question of the exclusion of the boy from the schools and that its action is void within the rule "that when a board of public officers is about to perform an act requiring the exercise of discretion and judgment the members must all meet and confer together, or must all be properly notified of such meeting, in order to make the action binding.    Individual and independent action, even by a majority of the members of the board, will not suffice."    *McNolty v. Board of School Directors,* 102 Wis. 261, 78 N. W. 439.    It is true that the exclusion of the boy in the first instance was not the result of the action of the *Board of Education* taken at a formal meeting thereof.    However, at its meeting on September 13th the board did meet as a board and conferred upon the question as to whether he should be reinstated.    A motion was made that he be reinstated, which motion received no second. This amounted to a refusal on the part of the board, acting as a

board, to permit him to attend the public schools of the city. The point is not well taken.

The action of the school board, unless illegal or unreasonable, is not subject to the interference of the courts, from which it follows that the complaint of the petitioner should be dismissed.

*By the Court.*—Judgment reversed, and cause remanded with instructions to dismiss the petition.

Eschweiler, J. (*dissenting*). I cannot agree with the result arrived at in the majority opinion in this case for two reasons:

First, because, even under the rule of law adopted by the majority as to the power vested in the school board, it was still a question for the jury as to whether or not there was an unreasonable interference with plaintiff's rights, there being no evidence that as a fact this boy's presence did have any harmful influence on the other children.

Second, because I believe there is no such exclusive power intended to be vested in such school board.

Those who drafted the constitution of this state evidently intended to secure to every child a substantial and fundamental right to attend the common schools. Sec. 3, art. X, Const., reads as follows:

"The legislature shall provide by law for the establishment of district schools, which shall be as nearly uniform as practicable; *and such schools shall be free and without charge for tuition to all children between the ages of four and twenty years;* and no sectarian instruction shall be allowed therein."

Unquestionably the right of the individual child under such constitutional provision is subject to the equal rights of all other children to the same, and when the attendance of any one child in the public school is a material infringement upon the rights of other children to also enjoy the benefits of free schooling his right must yield.

State ex rel. Beattie v. Board of Education, 169 Wis. 231.

The majority opinion finds the warrant for the construction it gives to the power of the school board in this case upon the statute giving such school boards the supervision, management, and control of the common schools. I cannot agree that a statutory power can be exalted above a guaranty of the constitution. Even were the statute to say, as it does not, that the decision of such a school board is to be exclusive and controlling save and except the one complaining of the exercise thereof is able to show that the exercise of such power by the school board was arbitrary and unreasonable, it would be subject to the substantial objection that it placed an unwarranted burden of proof upon one deprived of a constitutional right.

I think the burden was properly laid, by the instruction given by the trial court to the jury in this case, upon the defendants to show that their action was a reasonable exercise of their statutory duty. If they were unable to convince a jury to that effect their order should be set aside.

Not one of the cases cited in the majority opinion considered any such constitutional privilege as here suggested. The former decision of this court cited does not mention such provision. The Iowa constitution, particularly, expressly grants just such power as is contained in our statute to such board in one of the fifteen subsections of art. IX of that document relating to a board of education. The Massachusetts constitution contains no provision like ours.