Margaret E. Horrie, Executrix Under the Last Will and Testament of C. B. Horrie, Deceased, Defendant in Error, v. The Industrial Casualty Insurance Company of Bloomington, Plaintiff in Error.

Gen. No. 8,757.

Opinion filed October 13, 1933.

RICHARD F. DUNN and HALL, MARTIN, HOOSE & DePEW, for plaintiff in error; EDWARD BARRY, JR., of counsel.

COSTIGAN & WOLLRAB, for defendant in error.

MR. JUSTICE DAVIS delivered the opinion of the court.

C. B. Horrie in his lifetime recovered judgment in the sum of $1,033.17 in an action of assumpsit for indemnities accruing under an accident insurance policy, issued by the Industrial Casualty Insurance Company, after which he died and defendant in error was substituted as plaintiff.

The policy of insurance is dated May 19, 1930, and plaintiff was insured against loss of life, limb, sight or time, resulting directly and independently of all other causes from bodily injury sustained through purely accidental means, during the term of the policy, subject to the provisions and limitations therein contained.

Part C of policy is as follows, "Total accident disability $100.00 per month for life." "If such injuries, as described in the insuring clause, shall wholly and continually disable the insured from the day of the accident from performing any and every duty pertaining to his occupation for one day or more, and so long as insured lives and suffers said total loss of time, the company will pay a monthly indemnity at the rate of $100.00."

The defense of the plaintiff in error is that the total disability of Horrie did not result directly and independently of all other causes from the bodily injuries received by him.

From the evidence it appears that in August, 1930, the assured discovered that he was passing blood in his

urine, and in October of that year one of his kidneys was removed.

Doctors Wellmerling, Sloan and Meyer participated in the operation.

Dr. Sloan testified that they found a large capsulated tumor within the kidney, and that there was nothing infected except the tumor that was inside of the capsule of the tumor. By capsulated was meant that there was a definite line of demarcation between the tumor mass and the rest of the kidney, the rest of the kidney being distended and covering it; the capsule of the kidney had not been punctured. The pedicle of the tumor was clamped, and not only the malignant tumor but the entire kidney structure surrounding it was removed, so that there was practically no danger of return or extension to another part, because it was possible to remove the malignant growth.

Dr. Wellmerling testified that they found a tumor of the right kidney; that the capsule of the kidney was all intact so far as they could determine at the time of removal.

Mr. Meyer testified that when the kidney was removed he cut through it in order to see if he could determine where the hemorrhage came from, and there was a mass in the substance of the kidney perhaps as large as a nickel, and of a different color. We all agreed at once it was a malignancy that existed in the kidney; it was entirely confined to the kidney, and not even in contact with the capsule of the kidney. The kidney appeared to be enlarged. It is generally agreed that metastasis cannot result until there is regional infection, and there was no evidence of such infection.

On January 1, 1931, Horrie returned to work and continued until March 12th of that year, when he was walking along the street and slipped on the ice and fell and fractured his left hip. The fracture was of a very severe character, being a comminuted fracture; little

pieces of bone were broken off, in addition to the break, and caused complete disability. There was no evidence of carcinoma at the time the fracture occurred. Horrie remained in the hospital until July 2, 1931, when he returned home, but was never able to bear his weight on his left leg even with the aid of crutches. About the latter part of September, 1931, he suffered a spontaneous fracture of the femur of the right leg, which, upon examination, disclosed was caused by a malignant growth or cancer.

About two weeks after this a swelling developed in the left hip; and in about three or four months, after the fracture of the right femur, it was noticed that the left hip had greatly enlarged and cancer had developed at the point of the fracture.

The suit is brought upon the theory that the cancer in the left hip was the result of the accidental fracture thereof; and is defended on the theory that the disability was the result of malignant cancer of the right femur and the left hip, not caused by any accidental means but caused by the metastasis or extension of the primary carcinoma of the kidney to those parts of the body.

Metastasis is defined by the surgeons as a portion of a proliferating growth that gets into the blood stream or lymphatics and is carried to some other portion of the body, broken loose from its original attachment and attaches to some other portion of the body, and grows at that point.

The evidence of the plaintiff tended to prove that the assured was susceptible to cancer, as evidenced by its appearance in the kidney and the right leg; that irritation of the tissues is a common cause of cancer; that the constant irritation from the sharp fragments of the broken and splintered bones of the hip could cause the cancerous growth there, and that if he had broken any other bone, the probability is that a

malignant growth would have developed at the point of fracture on account of the predisposition of the assured to cancer, and that the malignancy which developed in the left hip was a primary growth and was not caused by metastasis; that the possibility of the latter causative was remote.

The evidence of the physicians who testified for plaintiff in error was chiefly to the effect that the cancer in the left hip could have been caused by metastasis; one witness placed the chances of such being the case at 50-50. It would be useless to discuss the testimony of each of the expert witnesses on this subject.

We have carefully considered the evidence in this case, however, and conclude that the testimony of the operating surgeons that the infected kidney was removed together with all of the malignant tissues in connection therewith; that the malignant growth therein was of recent origin; that in their opinion no metastasis could have originated from the kidney region; that the cancer in the left hip was at the site of fracture; that the fracture was such as caused irritation, as shown by the photograph, and by excessive pain and that irritation is a well-known cause of cancer; that said cancer in the left hip was primary and not a metastasis, is prima facie evidence that the fracture was the primary cause of the cancer. Whether this prima facie case was overcome by the expert testimony, given by the witnesses for plaintiff in error, was a question of fact for the jury to determine; and we would not be justified in reversing their judgment under these circumstances.

There is criticism of the arguments of counsel to the jury. In one instance on objection the court instructed the jury to disregard the statement; and as to the others, the remarks were not of such a character as would constitute reversible error.

The second refused instruction, offered by plaintiff in error, informs the jury that before they can find the issues for the plaintiff, they must find, from a preponderance of the evidence, that the total disability resulted from bodily injury sustained through purely accidental means, directly and independently of all other causes. This instruction follows the language of the policy, but without modification is misleading. If a cancer in the left hip was caused by and was the direct result of the fracture thereof, then a liability was created under the terms of the policy. *Central Accident Ins. Co. v. Rembe,* 220 Ill. 151; *Crandall v. Continental Casualty Co.,* 179 Ill. App. 330; *Hibbs v. United States Fidelity & Guaranty Co.,* 262 Ill. App. 279; *Sturm v. Employers' Liability Assur. Corp.,* 212 Ill. App. 354; *United States Health & Accident Ins. Co. v. Harvey,* 129 Ill. App. 104. The same criticism applies to the 13th refused instruction. Refused instruction 4 has been held to be erroneous in a number of cases. *Chicago Union Traction Co. v. Hampe,* 228 Ill. 346; *Elgin, J. & E. Ry. Co. v. Lawlor,* 229 Ill. 621; *Lyons v. Ryerson & Son,* 242 Ill. 409.

Refused instruction 6 attempted to define the words, ''preponderance of evidence.'' It has been held that these words are in the same category as ''reasonable doubt,'' and require no technical explanation or elaboration, as every person of reasonable intelligence knows what they mean. *Chicago City Ry. Co. v. Kastrzewa,* 141 Ill. App. 10; *Ledford v. Hartford Fire Ins. Co.,* 161 Ill. App. 233.

This suit is to recover payments for total disability from September 12, 1931, to August 15, 1932; and it is conceded that, if plaintiff could recover at all, the amount found by the jury is correct.

In our opinion there is no reversible error in the record, and the judgment is affirmed.

*Judgment affirmed.*