## HOOKER v. NEW YORK LIFE INS. CO.
### No. 9170.

Circuit Court of Appeals, Seventh Circuit.

May 8, 1947.

Rehearing Denied June 10, 1947.

MINTON, Circuit Judge, dissenting.

———————◇———————

Wendell J. Brown and Joseph A. Dubbs, both of Chicago, Ill., and Ferdinand H. Pease, of New York City, for appellant.

Herbert M. Lautmann, Isaac E. Ferguson, John J. Faissler and Henry S. Moser, all of Chicago Ill., for appellee.

Before EVANS, MAJOR and MINTON, Circuit Judges.

MAJOR, Circuit Judge.

This appeal is from a summary judgment in favor of the plaintiff and against the defendant in an action predicated upon the double indemnity provision of a life insurance policy. The policy was issued June 3, 1938, upon the life of George K. Hooker in the sum of $10,000, his father, John P. Hooker, being the beneficiary. The annual premium was $315.20 which included $16.80 for the double indemnity. The face amount of the policy has been paid by the defendant and it is the double indemnity, that is the additional $10,000, which is sought to be recovered in this suit. The double indemnity provision, so far as here material, provides:

"* * * upon receipt of due proof * * * that the death of the insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means * * *; provided, however, that such double indemnity benefit shall not be payable if the insured's death resulted, directly or indirectly, from * * * war or any act incident thereto."

The sole question for decision is whether "insured's death resulted directly or indirectly, from * * * war or any act incident thereto." Obviously, a decision requires a determination of what was meant and intended by this so-called exclusion clause, as well as its application to the circumstances responsible for the insured's death.

There is no question on the record as to the facts. It is important, however, that they be related and kept in mind. The insured at the time of his death (May 19, 1943) and previous thereto was a captain in the United States Marines, assigned to Company "E," Third Tank Battalion, Third Marine Division, which was a part of the

21st Regiment of the United States Marines. On the date of the fatal accident this regiment was stationed in New Zealand and was engaged in war training maneuvers over an area of several square miles, about one mile from the bivouac area near Auckland. On the second or third day of the maneuvers Captain Hooker, while playing the role of a scout, was captured by the "enemy" (Company "E," Second Battalion, 21st Marines), and turned over to a patrol composed of about six members of Company "E," to be taken as a "prisoner" to their command post. On this return trip, while the patrol had stopped for rest, Captain Hooker, taking the guards by surprise, made a break to escape. In his effort to do so he ran about 100 yards with the guards in pursuit, when suddenly in the chase he leaped over a fence, breaking through bushes which were later found to cover the edge of a cliff about 60 or 75 feet deep. He fell over the cliff and was discovered below by the chasing patrol. He was semi-conscious and kept repeating such phrases as "have to get away" and "can't be captured." The accident happened about 2:30 p. m. and he died a few hours later from the injuries sustained in the fall. He was on official duty at the time the accident occurred.

Defendant requests that we take judicial notice of the facts of the existence and progress of World War II, which no doubt we may appropriately do. In connection with such matters, defendant sets forth in some detail the various battles and activities which had taken place prior to the insured's death, which we think unnecessary to relate. Plaintiff urges that we should also take judicial notice that the places and areas mentioned by the defendant were from two to six thousand miles distant from the maneuver area in New Zealand where the insured was accidentally injured.

Plaintiff's contention that the insured's death did not result, directly or indirectly "from * * * war or any act incident thereto" is based upon an extremely narrow and restricted meaning to be attributed to those words. In his brief he gives numerous dictionary definitions of the word "war" and concludes that "war" "in its ordinary and natural meaning, connotes an occurrence in course of active engagement between fighting forces." Consistent with this contention he states: "In a broad sense, of course, the insured as a captain in the Marine Corps was a participant in the war from the time of his enrollment until the time of his death. All of his activities, except perhaps while on leave, were part and parcel of the war program. But all such activities, however, did not constitute engagement or involvement in 'war' or 'act incident thereto,' within the meaning of the war exclusion clause of the double indemnity coverage."

In other words, he contends that "war" must be limited to actual combat and that an "act incident thereto" must be confined to an "act" performed in connection with actual combat duty. With this meaning thus attributed to "war or an act incident thereto," the argument is made that insured's death did not result therefrom. On the other hand, defendant concedes that all accidents occurring during the insured's military service are not excluded. Its position, however, is that the facts and circumstances surrounding the insured's injuries and resultant death show that such injuries were the result of "war or an incident thereto."

The parties have sought to fortify their respective contentions by the citation and discussion of innumerable cases. After studying them, we are satisfied that no good purpose could be served in attempting to review them all. We shall, therefore, confine ourselves to a few of the cases upon which emphasis is placed by the parties.

The only case called to our attention involving the same exclusion clause which the court applied to facts similar to those of the instant case is Eggena v. New York Life Ins. Co., 236 Iowa 262, 18 N.W.2d 530, decided by the Supreme Court of Iowa. In that case the insured was engaged in military training at Camp Chaffee, Arkansas. He was riding a government tank which was proceeding in a training convoy to a bivouac area. As the tank started across a bridge, the right track crashed through the bridge railing and fell to the stream bed below, causing the death of the insured from skull fracture. In that case,

as here, the sole question was whether the death of the insured resulted directly or indirectly from war or any act incident thereto. The court, after discussing numerous cases, among other things stated (18 N.W.2d 534): "A clause excluding liability in the event death results directly or indirectly from war, we are satisfied, must apply to a member of the military forces, a member of an army tank crew, on active duty, while in the line of duty, acting under orders from superior officers and carrying out a military assignment as a part of his training during the prosecution of war. The death of insured was the direct result of an act incident to war. * * * We can conceive of no part of a soldier's duties while an active member of a military force, except actual combat, which is more directly traceable to war than the performance of the duties in which deceased was engaged at the time of the fatal accident. This would be the common understanding of an injury caused by war and it was so reported by insured's superior officer. It was a result of war, and as such the exclusionary clause applied."

Plaintiff in his brief states: "The fallacy of the Eggena case is that it does not limit the war exclusion clause of defendant's policy to engagement or involvement in war, but incorporates therein activities or occurrences accounted for by the existence of a state of war, even though such activities or occurrences do not of themselves form part of the conflict or hostilities."

Plaintiff's criticism of the Eggena case is another illustration of his contention that the exclusion clause must be limited to injuries sustained in actual combat. He also seeks to impair the holding of that case by arguing that three cases cited do not sustain the result reached. These cases are Stankus v. New York Life Ins. Co., 312 Mass. 366, 44 N.E.2d 687; Coxe v. Employers Liability Assurance Corp., 2 K.B. 629, and Vanderbilt v. Travelers Ins. Co., 235 N.Y. 514, 139 N.E. 715, affirming 112 Misc. 248, 184 N.Y.S. 54. While these cases are not precisely in point, we think they lend support to the decision, and in any event they are of no benefit to plaintiff's instant contention.

In the Stankus case [312 Mass. 366, 44 N.E.2d 688], the exclusion clause provided for death resulting "directly or indirectly, from * * * (d) war or any act incident thereto," as in the instant case. The insured was a member of a crew and was lost at sea when his vessel was sunk by a torpedo. At the time of insured's death the United States was not a participant in the then existing war and the plaintiff contended that the word "war" as used in the exclusion clause was not applicable under such circumstances. The court, in deciding against the plaintiff, stated (44 N.E.2d 687, 688): "The term 'war' is not limited, restricted or modified by anything appearing in the policy. It refers to no particular type or kind of war, but applies in general to every situation that ordinary people would commonly regard as war. There is nothing in the policy that indicates that the word was used in any vague, indefinite or ambiguous sense. * * * We hold that the clause exempting the defendant from liability where death is caused by war is not restricted in its operation to a death that has resulted from a war being prosecuted by the United States."

In the Coxe case, the exclusion clause relieved the insurance company of liability for death "caused by, arriving from or traceable to * * * war." The insured, a captain, was run over by a railroad train. The company of which the insured was commander had been assigned to protect the railroad. The accident occurred when the insured was at night visiting the men under his command. The court held that the insured's death was caused by war and denied recovery. The point of this case is that the insured was not engaged in actual combat but in an activity incident to the prosecution of the war.

In the Vanderbilt case, the contract excluded death "resulting 'directly or indirectly, wholly or partly from * * * war.'" The insured was a passenger on the British steamer Lusitania and was drowned when that ship was sunk by torpedoes fired from a submarine of the German government. Here, as in the Stankus case, the plaintiff sought to escape the exclusion clause on the ground that the United

States was not at war at the time of the insured's death. The court held that the act was one of war within the meaning of the exclusion clause and exonerated the defendant company.

In Selenack v. Prudential Ins. Co. of America, 160 Pa.Super. 242, 50 A.2d 736, 737, the court considered a situation similar to the instant case. The insured was in command of an armored tank engaged in demonstration. While returning to his post at Fort Knox, Kentucky, the tank, to avoid a collision, was driven off the highway and overturned, resulting in the insured's death. The exclusion clause excepted death resulting "from having been engaged in military or naval service in time of war." While the exclusion clause is not the same as that of the instant case, it was contended by the plaintiff that it applied "only to combatant service." The court in rejecting plaintiff's contention cited and discussed a number of cases, among which is the Eggena case, supra, and as to this case stated (50 A.2d 738): "The court held, and properly so, that the death of insured was the direct result of an act incident to war and recovery was denied on that ground."

The court also reviewed the opinion of the District Court in the instant case (Hooker v. New York Life Ins. Co., 66 F. Supp. 313) and concluded that it was against the "clear intent of plain excluding language."

Another case called to our attention is that of Clarke v. New York Life Ins. Co. (not reported), decided by the Court of Common Pleas, County of Sumter, South Carolina. Accidental death resulting "from war or any act incident thereto" was excluded. The insured while on active duty was killed while making a flight in an airplane. The court decided that the exclusion clause was applicable and in so doing stated: "In my opinion his death did result from war or some act incident thereto. I don't think we should confine that to the battlefield or to actual combat. It is necessary in the prosecution of the war for troops in this country to carry on duties. We could not divide the line right at the battle front. I could not say that if this had taken place in England, for example, it would not be a result of the war; and I think that a soldier who performs his war duties on the home front is participating in the war just as a soldier on the battlefield."

Plaintiff places his chief reliance upon Mattes v. Merchants Reserve Life Ins. Co., 221 Ill.App. 648 (reported only in abstract form although we have been furnished with the complete opinion), and the cases therein cited. In that case the insured was in the military service and while so engaged met his death at Camp Logan, Texas, while attempting to quell a riot between colored troops and white civilians. The policy contained a provision declaring it to be void if the insured "shall engage in the military or naval service in time of war." Although not plain from the opinion, it appears that the policy also contained an exclusion clause relieving the insurer of liability if death resulted "from service in war." The court held the insurer liable apparently on the theory that the insured's death did not result from his war service.

Three cases were cited by the Illinois court, to which we shall now refer inasmuch as they are so strongly relied upon here. Such cases are Kelly v. Fidelity Mutual Life Ins. Co., 169 Wis. 274, 172 N.W. 152, 4 A.L.R. 845; Redd v. American Central Life Ins. Co., 200 Mo.App. 383, 207 S.W. 74, and Malone v. State Life Ins. Co., 202 Mo.App. 499, 213 S.W. 877. The action in the Kelly case was upon a single indemnity policy with a provision exempting the insurer from liability if death resulted "as a result, directly or indirectly, of engaging in such service or work [military or naval service]." [169 Wis. 274, 172 N.W. 153] The insured was accidentally killed in France during the first World War while supervising the construction of sawmills. In the discharge of such duties he was killed while riding a motorcycle, traveling from one sawmill to another. The insurer was held liable on the theory that the accident occurred under circumstances "which were not in any way peculiar to the military service." The court emphasizes that one in civilian life might well have met with the same character of misfortune.

The Redd case was also an action upon a single indemnity policy. Under the application the policy was void upon "Active service in the Army," and also exempted the insurer from liability "In case of death from service in war." The insured died from pneumonia at a training camp in Kansas. In sustaining the insurer's liability the court held that the insured at the time of his death was not engaged in "active" military service. In other words, the court drew a distinction between service in the army and "active" service therein.

In the Malone case [202 Mo.App. 499, 213 S.W. 880], the insurer was relieved of liability in case "the insured shall engage in any military or naval service in time of war * * * in event of the death of the insured * * * as a result of such service." The insured was killed while stationed at Jefferson Barracks, Missouri, by "accidental gunshot wound at the hands of a fellow soldier." The court in sustaining liability held that military service alone was not sufficient to relieve the insurer of liability and that there was nothing in the record to show that the insured's death was the "result of his military service."

All these cases, so we think, are distinguishable from the instant case both upon the language of the exclusion clause and the facts responsible for death. It may be conceded, so we think, that a plausible argument can be made that death resulting from pneumonia, accidental shooting and perhaps from riding a motorcycle even though in performance of a military duty was not the result of military service for the reason that death resulting under such circumstances is as likely to happen to a civilian as to one in military service. Thus it is pertinent to note that liability in all these cases is predicated upon the theory that the injury was not the result of war or military service. In other words, the injury was as likely to have occurred in non-military service. This is in marked contrast to the instant situation where notwithstanding the injury was sustained as a result of military service it is contended that such injury is not excluded because it did not occur in actual combat.

Finally, we refer to Johnson v. Mutual Life Ins. Co. of New York, 154 Ga. 653, 115 S.E. 14, 15, a case now much relied upon by plaintiff. This was an action upon a double indemnity policy which excluded liability "in the event of the insured's death as the result of military or naval service in time of war," and also "if such death be caused directly or indirectly, wholly or partly, by * * * war, or any act incident thereto." It will be noted the latter phrase is similar to that of the instant case. The insured, a few days after the policy was issued and while in the military service, was being transported with other troops from one training camp to another. While enroute he had his head projecting from a window and was struck and killed. The court pointed out that the policy did not relieve the insurer of liability merely because death resulted in the service but, as in the other cases to which we have referred, predicated its holding of liability upon the theory that the insured's death was not the result of his military service and was not caused by war or an act incident thereto. Again the court emphasizes that it was an accident which might befall soldier and civilian alike. The court also points out, "It was not shown that he was even being transported to the scene of any war," and indicates that such proof would have shown that death resulted as "an incident to war."

The provisions of an insurance contract must be understood and accepted in their plain, ordinary and popular sense. Bergholm, et al. v. Peoria Life Ins. Co. of Peoria, Ill., 284 U.S. 489, 492, 52 S.Ct. 230, 76 L.Ed. 416. See also Williams v. Union Central Life Ins. Co., 291 U.S. 170, 180, 54 S.Ct. 348, 78 L.Ed. 711, 92 A.L.R. 693. Applying this rule to the instant situation, we think there is no escape from the conclusion that the insured's death resulted from "war or an act incident thereto." To think, as plaintiff would have us do, that war as used and intended by the parties was confined to combat service is to attribute to the word a meaning that is unnatural and unreal. Combat service is only the culmination of the myriad separate and independent acts all of which are an essential part of war. When a person enters the military service of his country which is engaged in war with an enemy country, ev-

ery act performed in training and preparation for actual combat service under the command of military authority is a necessary and essential part of the war. And we are definitely of the view that a soldier's engagement in such war cannot logically be made to depend upon a situation either in time or distance to the point where bullets are being exchanged with the enemy. Military training, especially in time of war, serves the highly important purpose of preparing the soldier that he may better destroy the enemy, as well as defend himself when he reaches the front line. To say that during this course of preparation he is neither in the war nor performing an "act incident thereto" borders on the preposterous. The millions of men who rendered military service in the recent war both at home and abroad undoubtedly would be shocked and astounded if informed that they were not in the war because they did not reach the ultimate goal of combat service. And the thousands of men who failed to reach the combat zone but who sustained injuries and wounds during the course of their training would likewise be astounded and shocked if informed that they were not engaged in war and that their injuries were not sustained as a result thereof or an "act incident thereto."

Numerous hypothetical injuries have been cited and many others could be conjured to which the exclusion clause might not be applicable. As to some, no doubt, a plausible argument can be made that such is the case. Generally, as shown by the cases, they may be classified as injuries not peculiar to the military service but those equally likely to occur in civilian life. In other words, they are not the result of military service or war. We need not attempt, however, to draw the line between those which are excluded and those which are not, and neither do we need to consider or decide hypothetical or imaginary cases. Our duty is to decide the question presented on the facts of this case and not some other.

The circumstances surrounding the unfortunate accident which befell insured point unerringly to the conclusion that he was engaged in "an act incident to war." The total objective of his military service was to prepare himself and those under his command to aid his country in winning the war. Solely for the accomplishment of this objective he and those under his command were stationed in New Zealand, a place designated for their training. They were engaged in an activity under military command as one of the necessary steps in the conduct of the war. The insured was in New Zealand because of war and his activities were because of war and a part of war. The activities in which he was engaged and which resulted in his death were in no wise common to a civilian. Certainly such activities must have been incident to something. If not war, what was it? As we view the matter, his death was clearly an incident of war. The plain, unambiguous language of the exclusion clause as applied to the facts of the instant situation requires a reversal of the judgment.

The judgment of the District Court is therefore reversed and remanded, with directions to proceed in accordance with the views herein expressed.

MINTON, Circuit Judge (dissenting).

I cannot agree with the Court's opinion in this case. That insurance contracts are to be construed most strongly against the insurance company needs the citation of no authority. I do not think that death resulted in the instant case directly or indirectly "from * * * war or any act incident thereto." I think that the insured met his death *as an incident of training for war*. It would have been simple enough for the defendant to have added to the limiting clause "or an act incident to training for war." This it did not do. The majority very obligingly supplies it for the defendant, thus expanding the exclusion provision by construction to cover every one in service who is engaged in training.

I quote the majority opinion: "When a person enters the military service of his country which is engaged in war with an enemy country, every act performed in training and preparation for actual combat service under the command of military authority is a necessary and essential part of the war. * * * To say that during this course of preparation he is neither in the war nor performing an 'act incident thereto' borders on the preposterous."

This position is far more extreme than the defendant claimed on oral argument or in its brief. I quote from the brief:

" * * * the defendant could have written a provision that the Company would not be liable for the double indemnity benefit if a fatal accident resulted directly or indirectly from *service* in the armed forces in time of peace or in time of war.

"The defendant has never claimed that such were the terms of the double indemnity provisions pertaining to war or an act incident thereto · * * *."

When our country is at war, we are all in the war in a broad sense; but we are not all in service. One who has not completed his training can hardly be said to be engaged in war or any incident thereof. Certainly an incident of training for war ·is not the same thing as an incident of war. The provision of the policy should not be construed to include as incidents of war what are only incidents of training for war, unless we are prepared to say all acts incident to training for war are also incident to war. Such a liberal construction of the policy is unwarranted.

Furthermore, I think that we are bound by the law as declared by any court of the State of Illinois, in the absence of more convincing evidence as to what the law is. Fidelity Union Trust Co., et al., Executors v. Field, 311 U.S. 169, 61 S.Ct. 176, 85 L. Ed. 109.

The law in Illinois is best indicated in Mattes v. Merchants Reserve Life Insurance Co., 221 Ill.App. 648, cited and commented upon by the majority in its opinion. It would indicate to me that the courts of Illinois would sustain liability in the instant case and not follow the Iowa case of Eggena v. New York Life Ins. Co., 236 Iowa 262, 18 N.W.2d 530. The Court in the instant case, commenting upon the Mattes case, said the insurer was held liable "apparently on the theory that the insured's death did not result from his war service." I think the Illinois courts have clearly indicated that all persons in service in time of war and on duty when killed are not to be considered as having met their death as a result of war or war service. It seems to me the courts of Illinois would not go the length of holding that anyone killed while in training in service would be excluded from coverage by the contract under consideration.

I would give the defendant nothing by construction that the plain words of the policy did not spell out. If the provision did not plainly exclude the insured from coverage, I would say he was covered. It seems to me the contract is not so plain, and it requires construction favorable to the defendant, extending the scope of the policy far beyond the ordinary meaning of the words used, to reach the conclusion reached by the Court. The defendant is not entitled to such a construction. To me it seems a strained construction in favor of the defendant to say that an incident, of training for war is the equivalent of an incident of war. People jump over cliffs and into hidden dangers in life outside the armed service, and certainly every one in service who is in training is not excluded by the provision in question. I would affirm the judgment of the District Court.