**PRESTON v. ÆTNA LIFE INS. CO.**

No. 46C1293.

District Court, N. D. Illinois, E. D.

May 10, 1948.

Miller, Gorham, Wescott & Adams, of Chicago, Ill , for plaintiff.

Defrees, Fiske, O'Brien &' Thomson, of Chicago, Ill., for defendant.

CAMPBELL, District Judge.

The plaintiff brought this action on an accident policy issued by the defendant, for the loss of his right leg. On October 20, 1944, while seated at his desk dictating, the plaintiff removed his right shoe because his foot was sore, and, in attempting to place his feet on his desk, struck the great toe of his right foot on the edge of the desk or of the glass top thereon. The resulting injury, whether it was a bruise or scratch is disputed by the parties, developed into an ulcer which failed to heal, gangrene set in, and on January 6, 1945, within the ninety day period specified in the policy, the plaintiff's right leg was amputated below the knee.

The defendant has moved for summary judgment on the ground that the plaintiff's loss is not within the insuring clause of the policy, in that it did not result "directly and independently of all other causes from bodily injuries * * * effected solely through accidental means" and is within the exclusion clause, in that it was a "loss caused directly or indirectly, wholly or partly, * * * (2) by disease in any form * * *". The plaintiff contends, on the other hand, that if the accident was the proximate cause of the loss of his leg and the pre-existing condition the remote cause, he is entitled to recover.

The motion for summary judgment will be determined on the basis of the pleadings, the medical history of the plaintiff, which is stipulated by the parties, and medical affidavits filed on behalf of both sides.

The stipulated medical history reveals that for over a year prior to the injury which led to the amputation, the plaintiff had been under treatment for circulatory trouble in his right leg. He had experienced pains which interfered with walking; the foot would become numb while he was walking; later he noticed that the foot became numb when he was sitting down, at which times the foot would become quite white and cold. At times he had severe pains in his right toe which would awaken him several times a night; the pain gradually passed away when he sat on the edge of the bed. His trouble was diagnosed as peripheral vascular disease

involving chiefly the arteries of the right leg, the underlying vascular disease being arteriosclerosis. The history of pain and sensitivity on the right side of his body, involving the right wrist, right leg, right ankle and foot, goes back as far as 1940, although there were intervals of three or four months when he was free from any symptoms of this sort. It appears that the pain in the leg became his chief difficulty two or three years prior to the injury out of which this suit arose, and that he was being treated for it. Under the prescribed treatment of exercise, massage, and contrast baths, the plaintiff appeared to improve; pulsations returned in the right foot and the foot was pink and alive, without numbness or pain. It may be accepted, on the basis of the affidavits of the plaintiff's physicians, that medical treatment prior to this injury had stabilized the peripheral vascular condition and restored adequate circulation, whereby the vascular condition became a body infirmity of passive nature not sufficient of itself to result in an ill effect such as an ulcer developing into gangrene. The report of the physicians at the Johns Hopkins Hospital, where the amputation was performed, states, however, that the ulcer would probably have healed had not the circulatory condition of the foot been impaired.

There is disagreement among the medical witnesses whose affidavits and reports are before the court whether the plaintiff had Buerger's disease or arteriosclerosis. In view of the fact that it is agreed on both sides that the condition in the plaintiff's right leg contributed to the gangrene and amputation by preventing normal healing of the injury to the toe, I think it is immaterial to a decision on the legal issue presented by the clauses of the insurance policy which precise diagnosis is correct.

The legal issue presented here is whether, under the law of Illinois, the insured may recover under the policy provisions heretofore quoted when an injury combined with a physical impairment, or disease, results in a loss within the coverage of the policy, although neither the plaintiff's injury nor his physical condition alone would have caused the loss. Since the parties disagree sharply on the holding in certain cases, it will be necessary to examine the authorities in some detail.

The plaintiff places much reliance on Scanlan v. Metropolitan Life Insurance Co., 7 Cir., 1937, 93 F.2d 942. In that case, the deceased had been injured in an automobile accident, and died of a blood clot which formed in the bruised area of a leg where there was an enlarged varicose vein. Part of the clot broke off and lodged in the lung. The question under the policy was whether the death was caused partially by his bodily infirmity, varicose veins. The medical testimony was that a varicose condition is predisposed to trauma and that an injury may set up a thrombus in the leg so afflicted, that thrombosis can also occur where there are no varicose veins, and that a bruise is a causative factor of a thrombus because a damaged blood vessel is "cause one" for blood clot formation. The court held that this testimony presented a jury question whether the cause of death was wholly or partially the insured's bodily infirmity. The court went on to say by dictum that the word "cause" used in the exclusion clause of the policy "refers to something different than a disease or affliction rendered more serious by the consequences of the accident." 93 F.2d at page 946. The fact that the insured had bodily infirmities would not bar recovery if the accident excited the bodily infirmity into activity and death resulted. "If the infirmity alone would not have caused death, it cannot be said to have caused death when the immediate result was occasioned by an infirmity which became active only because of the accident. The infirmity may have made the insured less able to resist, but if the accident caused the condition which in turn affected the weak spot which did not resist as well as a healthy body, the cause is nevertheless the accident, and recovery cannot be avoided or evaded." Ibid. This proposition was stated as a matter of general law, prior to Erie Ry. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, and was supported by citations from several jurisdictions. The Illinois cases cited were Rowden v. Travelers Protective Ass'n, 1916, 201 Ill.App. 295; Prehn v. Metropolitan Life Ins. Co., 1932, 267 Ill.

App. 190; and Horrie v. Industrial Casualty Ins. Co., 1933, 272 Ill.App. 252.

In Nelson v. Business Men's Assurance Co. of America, 7 Cir., 1939, 108 F.2d 363, in which the Scanlan dictum was cited with approval, the insured died of peritonitis resulting from a ruptured gall bladder. On the afternoon prior to his being taken to the hospital, in helping to lift a stove, he slipped and struck the right side of his abdomen against a door jamb. It was found during the operation the next day that the insured had been suffering from chronic gall bladder infection. Medical testimony was that "the lifting of the stove and the falling against the door frame, either or both of these elements, might or could have brought about the condition resulting in the insured's death." 108 F.2d at page 364. On cross-examination one of the physicians stated that the diseased condition of the insured's gall bladder contributed to its rupture. Others testified that falling against a door or lifting a stove would not rupture a normal gall bladder. The District Court directed a verdict for the defendant. On appeal, the Circuit Court of Appeals reversed the judgment and remanded the cause for a new trial, saying: " * * * the jury might have reasonably found * * * that Nelson's death resulted solely from bodily injuries directly and independently of all other causes through accidental means." Ibid. 108 F.2d at page 365. Thus the case merely presented a jury question on the conflicting medical testimony whether the accident alone caused the insured's death or whether his pre-existing physical infirmity contributed to it, and the approval of the Scanlan dictum was itself dictum.

The Scanlan case was followed in Rebenstorf v. Metropolitan Life Insurance Co., 1939, 299 Ill.App. 71, 19 N.E.2d 420. In this case the insured was in an automobile accident, suffering an acute acerbation of the gall bladder (which had been diseased for many years) and was required to undergo an operation. The operation placed a strain on his heart, which had a dilatation of the heart chamber and a fatty condition of many years standing. He died as a result of the strain placed on his heart by the operation. The court said, at page 83 of 299 Ill.App., at page 425 of 19 N.E.2d: "If the accident, when operating upon either a healthy or unhealthy body, causes death by putting in motion a chain of events which can be directly traced back to the accidental injury, why then should not such accident be considered the sole cause of the death?" The court held that the trial court properly refused to give an instruction that the jury should find for the defendant if it found that the accident aggravated a pre-existing disease and that the insured died from the combined effects of the accident and the pre-existing disease. In arriving at this conclusion, the court relied on the Scanlan dictum and the Prehn and Horrie cases cited therein.

I turn now to a consideration of the Illinois cases cited in the Scanlan case. In the first of these, the Rowden case, the insured was working on a tree when a limb broke, throwing him to the ground. As a result of this accident, he suffered an abdominal hernia. An operation was necessary to correct the hernia, following which the insured died of pulmonary embolism resulting from the operation. The evidence showed that the insured had had a small nonprogressive hernia for many years prior to the accident. The insurance company argued that the injury from the fall was not the sole cause of the death of the insured independently of all other causes. The benefit certificate contained a specific exclusion of death resulting from hernia. The court held it was a question of fact whether the original hernia contributed to the injury, or whether the hernia which necessitated the operation was the result solely of the fall, and said (201 Ill.App. at page 302) : "An accident policy insuring against death from bodily injuries resulting from external accidental means but excepting death from hernia does not relieve the insurer from liability where death results from hernia caused by external violent and accidental means." The court concluded, 201 Ill.App. at page 305: "It was a question of fact for the jury whether the accident was the proximate cause of the death of the insured in that the surgical operation from which the embolus arose was necessary and was caused by the accidental injury of the insured."

In the Prehn case, the insured died of a ruptured spleen following his sudden rising from a chair in which he had been sitting tilted backward, the front legs of the chair coming down sharply on the floor. About three months previously, the insured had fallen from a scaffold while painting a building. There was some medical testimony that the fall from the scaffold weakened the spleen and thus contributed to its being ruptured by the sudden jarring movement of the chair; there was other medical testimony that the rupture could have occurred from the sudden jarring movement alone and that the only bodily changes found from the scaffold accident were multiple adhesions in the peritoneal cavity. The court concluded that the evidence sufficiently showed that the insured's death resulted from violent and accidental means independently of all other causes, and affirmed a judgment for the plaintiff.

In the Horrie case, the insured had had a kidney removed for cancer. Three months after he returned to work following the operation, he slipped on the ice and fractured his left hip. He returned home after four months in the hospital but was never able to bear his weight on his left leg even with the aid of crutches. About three months later he suffered a spontaneous fracture of his right leg which examination revealed was caused by cancer. About two weeks thereafter a swelling developed in the left hip and, in about three or four months, it was discovered that cancer had developed at the point of fracture in the left hip. The question was whether the cancer in the left hip was the result of the accidental fracture thereof, or whether it was the result of the cancer of the right leg caused by metastasis or extension of the primary carcinoma of the kidney to those parts of the body. The plaintiff's medical testimony was that there had been complete removal of the infected kidney together with all the malignant tissue; that the malignant growth in the left hip was of recent origin and that no metastasis could have originated in the kidney region; that the cancer in the left hip was at the point of fracture and that the nature of the fracture was such that there was much irritation and pain; and

that because of the insured's susceptibility to cancer as shown by its appearance in his kidney and right leg, and because of the fact that irritation of the tissues is a common cause of cancer, the malignancy which developed in the left hip was a primary growth and not a metastasis. The court held that whether this prima facie case was overcome by the defendant's expert witnesses was a question for the jury.

It thus appears that in the Scanlan, Nelson, Rowden, Prehn, and Horrie cases, the only issue was whether a jury question was presented by conflicting medical testimony concerning the cause of the insured's death or disability. They are therefore not authority for the interpretation to be given this type of exclusion clause under the stipulated medical facts of this case.

A similar situation, but one which should be distinguished from the case at bar, is one in which the insured suffered from a physical disability which made him more prone to accidents. It is in this situation that the courts apply the distinction urged here by plaintiff between proximate and remote causes. In Sturm v. Employers' Liability Assurance Corp., Ltd., 1918, 212 Ill.App. 354, the insured was found dead in the bathtub. The evidence was in conflict whether he died of drowning or heart disease, or of some other disease from which the post-mortem revealed he had been suffering. It appeared that one of these diseases could have made the insured unconscious and caused him to slip or fall in the water and drown. The court held that under the facts of the case, it would be improper to charge the jury that if disease contributed to the death of the insured the plaintiff could not recover, and that even if the diseased condition of the insured led to his falling into the water and being drowned, such contribution of disease to his death would not prevent recovery, because the law looks only to the proximate cause of death, drowning, and excludes the more remote causes. This reasoning was followed in Burns v. Metropolitan Life Insurance Co., 1936, 283 Ill.App. 431, in which the insured, who died as the result of a fall from the window of her home, had been suffering from dizzy spells

caused by arteriosclerosis and high blood pressure.

Another different fact situation was presented in Klinke v. Great Northern Life Insurance Co., 1943, 318 Ill.App. 43, 47 N.E.2d 506, in which recovery was allowed for accidental death although the insured was suffering from a usually fatal disease. The medical testimony was that the insured, whose death followed a fall, had died of dilatation of the heart. The opinion of the medical witness was that the fall might or could be the cause of the dilatation of the heart. It also appeared that the insured was suffering from leukemia, a form of cancer. The medical witnesses agreed that there was no causal connection between the leukemia and the dilatation of the heart. The court affirmed a judgment for the plaintiff because there was no connection between the disease and the death of the insured. The causal connection was solely between the accident and the death.

The situation presented by the case at bar, of the concurrence of an accidental injury and a pre-existing diseased condition resulting in death or loss which neither the accident nor the disease alone would have caused, was present in Crandall v. Continental Casualty Co., 1913, 179 Ill. App. 330. In that case the insured died from the combined effects of choking on a particle of food and the rupture of an abscess behind the esophagus. The injury produced by the lodging of the food in the esophagus caused the insured's death only because of the presence of the abscess. The court said that it was immaterial whether the abscess would or would not have ultimately caused the insured's death. The court also discussed the proximate cause argument made here by the plaintiff, concluded that it has no application in a case where the question of the insurer's liability depends on what is the "only cause" of the death or loss, or an equivalent phrase, and held that the insurer is not liable under this type of clause when the death or loss resulted from the accidental injury and the pre-existing disease or bodily infirmity acting together. This rule has been followed in Strehlow v. Ætna Life Insurance Co., 1913, 183 Ill.App. 50; Wayne v. Travelers Insurance Co., 1921,

220 Ill.App. 493; Ebbert v. Metropolitan Life Insurance Co., 1937, 289 Ill.App. 342, 7 N.E.2d 336, affirmed 1938, 369 Ill. 306, 16 N.E.2d 749; Schroeder v. Police & Firemen's Insurance Ass'n., 1939, 300 Ill. App. 375, 21 N.E.2d 16; Welte v. Metropolitan Life Insurance Co., 1940, 305 Ill. App. 120, 27 N.E.2d 63.

It is clear from this review of the Illinois cases that there can be no recovery under the insuring and exclusion clauses of this policy when the insured suffers a loss as the result of the combined effects of an accidental injury and a pre-existing disease. The dictum in the Scanlan case was a statement of general law, not specifically of Illinois law. The decision of the Illinois Appellate Court in the Rebenstorf case followed the Scanlan dictum and did not discuss the line of cases following the Crandall case, and hence must be considered a minority view in Illinois. Furthermore, since the Scanlan case the Circuit Court of Appeals has recently expressed a different theory of interpretation respecting exclusion clauses in insurance policies. In Hooker v. New York Life Insurance Co., 7 Cir., 1947, 161 F.2d 852, in which the court held that a death resulting from an accident occurring during training and maneuvers came within an exclusion clause respecting deaths resulting from "war or any act incident thereto", the court declared 161 F.2d at page 856, "The provisions of an insurance contract must be understood and accepted in their plain, ordinary and popular sense." When an insurer contracts to cover losses resulting "independently of all other causes from bodily injuries" and specifically excludes losses caused "wholly or partly by disease in any form", it is not giving effect to the plain, ordinary and popular meaning of those words to follow the Scanlan dictum and to hold the insurer liable for the loss of the insured's leg merely because the insured stubbed his toe, when it also appears that that slight injury developed an ulcer which would not heal because of an underlying physical disability impairing the circulation in the leg, and which subsequently developed into gangrene requiring amputation of the leg.

748

It may be urged that a condition of impaired circulation, although contributing to the plaintiff's loss was not a disease within the meaning of the policy. Some people probably suffer from physical conditions, not falling within the diagnosis of a recognized disease, which make them less able to recover from accidents and other illnesses. But in this case even the plaintiff's medical experts in their affidavits state that the plaintiff was suffering from "a peripheral vascular disease". In any event, whether or not the word "disease" appears in the medical diagnosis, it is clear that a slight bruise or scratch on a toe does not ordinarily lead to gangrene and amputation in the absence of an underlying physical condition more serious than the mere lessened ability to effect a normal recuperation.

Since the loss was therefore either caused partly by disease, or in any event did not result independently of all other causes from the injury, the exclusion clause or the insuring clause, or both, defeat recovery. The defendant's motion for summary judgment is granted, and the cause is dismissed at plaintiff's costs.