FEUKEA G. EGGENA, Appellant, v. NEW YORK LIFE INSURANCE COMPANY, Appellee.

No. 46586.

MAY 8, 1945.

Larson & Carr, of Charles City, for appellant.

Carr, Cox, Evans & Riley and Ehlers English, all of Des Moines, for appellee.

HALE, C. J.— The facts in this case are not disputed. The policy in controversy, dated February 20, 1941, is upon the life of Charlie H. Lichtsinn in the sum of $1,000, his mother, Feukea G. Eggena, being the beneficiary. As a part of the policy appellee issued to the insured its double-indemnity agreement by which it agreed to pay the beneficiary, in addition to the face of the policy, the further sum of $1,000, "upon receipt of due proof, on forms prescribed by the Company, that the death of the Insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means and occurred within ninety days after such injury and prior to the anniversary of said

Policy on which the Insured's * * * age at nearest birthday is 65 and prior to the maturity of said Policy; provided, however, that such Double Indemnity Benefit shall not be payable if the Insured's death resulted, directly or indirectly, from * * * (d) war or any act incident thereto * * *.''

Lichtsinn, the insured, was born April 5, 1918, and was killed April 27, 1943, at Camp Chaffee, Arkansas, in a military tank accident, he being at the time a member of the tank crew acting under competent orders and in the performance of ordinary military duties. The death of insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent, and accidental means and occurred within less than ninety days after the injury. All premiums had been paid and the policy was in full force and effect. The appellee paid in full the single-indemnity life-insurance benefit of $1,000, but denied liability on the double-indemnity benefit of $1,000. The official report of the circumstances connected with the death of insured states:

"Private Lichtsinn was fatally injured while riding as an observer in a government tank as part of and in line of his official duties. The tank, being driven by another at the time of the fatal accident, was proceeding east on Access Road in a routine training convoy to a bivouac area. The convoy was traveling at fifteen miles per hour. Upon approaching the bridge across the Big Vache Grasse Creek, the driver slowed to about ten miles per hour and pulled to the right to avoid any possibility of colliding with vehicles of another convoy which was traveling in the opposite direction, across the bridge. As said tank started across the bridge, the right track crashed through the bridge railing and fell to the stream bed below, causing the death at said time of said Private Lichtsinn who received a compound skull fracture with laceration of brain from the fall.''

From the above statement of facts it will be seen that the sole question in this case is whether or not, under the circumstances detailed, the provision that the company would not be liable under the double-indemnity clause if insured's death resulted directly or indirectly from war or any act incident thereto applies.

■ The validity of a provision in an insurance policy such as we are here considering is almost universally recognized. See text and cases in annotation in 137 A. L. R. 1263, where reference is made to the opinions of various states. See, also, Swanson v. Provident Ins. Co., 194 Iowa 7, 188 N. W. 677; Field v. Southern Sur. Co., 211 Iowa 1239, 235 N. W. 571. Further, in the notes to the annotation above, it is said:

"The reason usually advanced as supporting the invalidity of provisions of this kind is that they are contrary to public policy because they tend to prevent men of military age from serving with the armed forces of the nation. This contention has, however, received short shrift from the courts."

Recognizing this fact of the extra hazards of war, many, if not all, insurance companies which provide for extended insurance for deaths by accident exclude those arising from the risks incident to war as increasing the liability of the policyholder for extra premiums beyond the peacetime mortality experience upon which such premiums are based. It is a risk not contemplated in the premium and one for which there can be no actuarial guide in determining premiums. Thus the ordinary insurance company excludes cases of accidental death which occur through war as being too uncertain and the liability probability too large. Financial protection is not denied to the serviceman, however. The government by insurance makes provision in such cases for the indemnity for death occurring through war so that the loss is not borne by policyholders but by the taxpayers.

■ The form of the exclusionary clause differs, however, in many policies and this court has never ruled upon a provision exactly the same as the one found in the policy involved herein. There can be no doubt, as appellant argues, that the words, terms, and provisions of insurance contracts, and particularly clauses limiting or excluding liability on the policy, must be given a practical, reasonable, and fair interpretation. 29 Am. Jur. 174, section 158. Such words must be given their plain, ordinary, and popular meaning and not peculiar or technical meanings.

■ It is further a well-known rule that in the construc-

tion of insurance policies the words, terms, and provisions thereof must be construed most strongly against the insurance company which uses them. The foregoing rules are commonly applied.

Appellant argues that as a matter of law the death of insured did not result directly or indirectly from war or any act incident thereto, and this is the substance of the whole case. We note the authorities cited by appellant. In Welts v. Connecticut Mutual L. Ins. Co., 48 N. Y. 34, 8 Am. Rep. 518, the policy gave insured permission to go south of the 36° latitude and reside there for the term of one year, with the provision that the policy did not insure against death from any of the casualties or consequences of war or rebellion or from belligerent forces. Insured, while engaged in building a railroad bridge, under direction of military authorities of the United States, a considerable distance in the rear of the Union Army and still farther from Confederate forces, was shot and killed by two men not in uniform, who robbed the men employed upon the work and near-by residents. The court held the language of the provision included only death from casualties or consequences of war or rebellion carried on or waged by authority of some de facto government, that the case did not come within that limit, and defendant was liable. The case in no way applies to the facts of this case and is no authority for appellant's position.

The same is true of Bull v. Sun Life Assur. Co., 7 Cir., Ill., 141 F. 2d 456, 457 [certiorari denied 323 U. S. 723, 65 S. Ct. 55, 89 L. Ed. 581], where the clause in question read, " 'Death as a result, directly or indirectly, of service, travel, or flight in any species of aircraft, as a passenger or otherwise, is a risk not assumed under this policy.' " Deceased was a lieutenant and alternate pilot of a seaplane. He was killed after leaving his plane and while in a boat by strafing from Japanese machine gunners. The holding of the court was that insured's death occurred after the termination of the airplane flight and was not the result, directly or indirectly, of service, travel, or flight in the plane.

Cited also are two Iowa cases referring to clauses of that nature exempting the insurer from liability. Boatwright v.

American L. Ins. Co., 191 Iowa 253, 254, 180 N. W. 321, 11 A. L. R. 1085, decided in 1921, and Swanson v. Provident Ins. Co., supra, decided in 1922. In the Boatwright case the excepting clause was:

" 'If within five years from date hereof, the death of the insured shall occur while engaged in the military or naval service in time of war, without previously having obtained from the company a permit therefor, the company's liability shall be limited to the cash premiums paid thereon for three years from date of issuance and thereafter to the legal reserve of the policy.' "

Insured died at the Great Lakes Naval Training Station of influenza, which was prevalent throughout the United States, and soldiers, sailors, and civilians were attacked thereby and died therefrom. Shortly after the policy was delivered, and without obtaining the necessary permit, insured enlisted in the Navy. At the time the United States was at war. The court found there was no question but that insured entered the naval service and became subject to the orders and discipline provided for that branch of the service. The opinion of the court centers around the meaning of the word "engaged" and whether or not insured was engaged in military or naval service. A number of authorities are cited and the court held that, while insured had entered the naval service in the sense that he had obligated and pledged himself to perform any service called upon to perform, he had not taken part in any movements of the Navy while it was engaged in conflict with the enemy, or other action, and he was merely pursuing a course of instruction preparatory to being assigned to active duty; that he was miles from the scene of war, and his occupation was not more hazardous than when the policy was issued and he did not come within the meaning of the clause, and the exemption therefore did not apply. There was a dissent by Justice Arthur.

The year following the Boatwright opinion this court handed down its ruling in Swanson v. Provident Ins. Co., supra, 194 Iowa 7, 11, 188 N. W. 677, 679, wherein, while the Boatwright case was not overruled, yet the court said:

"We think, however, that a clear distinction exists between that precedent and the case at bar."

It was stated the Boatwright case was a border-line case beyond which the court could not go without introducing confusion on the subject. In the Swanson case the provision was for limited liability if insured engaged in military service outside the continental limits of the United States in time of war, or in the United States in resisting invasion or insurrection, and if death occurred as a result of such engagement or within one year from discontinuance of said engagement of service. Insured died of pneumonia while serving as a bugler in France. The court held that the provision, " 'If the insured engage in military * * * service outside the continental limits of the United States in time of war * * *' " applied, and said:

"* * * and unless we are to assume authority to remake or to destroy the contract freely made by the parties, where neither fraud nor mistake is charged or proved, we discover no way of avoiding the conclusion that plaintiff's recovery must be limited by its terms to a repayment of the premium paid, with the stipulated interest."

It will be noted that in both of these cases the death of insured occurred from disease prevalent not only in the armed forces but among civilians, and that in neither of such cases was the clause exempting from liability worded as in the case at bar.

In the instant case the clause was, as stated:

"* * * provided, however, that such Double Indemnity Benefit shall not be payable if the Insured's death resulted, directly or indirectly, from * * * (d) war or any act incident thereto."

Insured's death was not the result of disease but did occur while in the military service and resulted directly from the carrying on of an act which was an essential part of the prosecution of war. It was not an act incident to anything but war. No nation would ever consider the use of fresh, untrained soldiers in a military campaign, and the training of such troops is fully as essential as the actual use of the soldiers in combat.

Especially is this so in mechanized warfare, and the members of the crews manning the various machines, such as tanks, must be trained in the actual field work they are to encounter later in combat. It was in such use of tanks that the death of insured occurred, directly and as a consequence of the operation of the tank of which he was a crew member. This was a necessary incident to war. Had insured not been engaged in the required and essential training, the accident resulting in his death would not have occurred. It was not a hazard of normal life but a hazard of one who was engaged in military service only.

The form of these war clauses varies with different policies. In this country the form in question has been passed upon in the case of Stankus v. New York Life Ins. Co., 312 Mass. 366, 368, 44 N. E. 2d 687, 688, which decision was handed down October 29, 1942. There insured was a seaman in the United States Navy, who lost his life in a torpedo attack on the ship upon which he was serving. The court said:

"As in the case of any other contract, the words of an insurance policy, in the absence of ambiguity, must be given their usual and ordinary meaning. The term 'war' is not limited, restricted or modified by anything appearing in the policy. It refers to no particular type or kind of war, but applies in general to every situation that ordinary people would commonly regard as war. There is nothing in the policy that indicates that the word was used in any vague, indefinite or ambiguous sense. A policy of insurance whose provisions are plainly and definitely expressed in appropriate language must be enforced in accordance with its terms."

The court held, citing cases, that, although the United States was not at that time at war, the death of insured arose directly or indirectly from war and was not a risk covered by the double-indemnity provisions of the policy, and judgment was rendered for defendant. This court has held to the rule quoted above in the construction of exemption clauses. See Field v. Southern Sur. Co., supra, and cases cited; Swanson v. Provident Insurance Co., supra. In the exemption clause in the present case, following the general rule, there is no need for construction since there is nothing ambiguous about its wording.

In Coxe v. Employers Liability Assur. Corp. [1916], 2 K. B. 629, the clause excluding liability is substantially the same as in the present case. The provision of the policy there was that there was no liability when death was directly or indirectly caused by or traceable to war. The insured was an Army officer who, during the period of war, was assigned to protect a certain stretch of railway in England with guards. It was his duty to visit the guards at night and while doing so to walk along the tracks. While engaged in this duty he was accidentally struck and killed by an engine. The accident occurred in a place where the general public had no right to walk and he was thus subjected to a hazard to which civilians were not exposed. The decision of the court was that his death was within the provision excluding liability whether death occurred directly or indirectly from war. The court emphasized the meaning of the phrase "directly or indirectly" and the decision was that this phrase constituted a more remote link in the chain of causation than the proximate and immediate cause. The holding was that insured's death was indirectly caused by war. The circumstances detailed in the Coxe case apply to the facts in this case, since it was war which caused the conditions here existing. There was a risk peculiar to war, or an act incident thereto, to which the general public, civilians and others were not exposed.

In the case of Vanderbilt v. Travelers Ins. Co., 112 Misc. 248, 184 N. Y. Supp. 54; id. 202 App. Div. 738, 194 N. Y. Supp. 986, affirmed 235 N. Y. 514, 139 N. E. 715, there was involved a policy whose provisions did not cover injury or death resulting "directly or indirectly, wholly or partly, from war." Insured was a passenger on the British steamship Lusitania and lost his life when the vessel was sunk during World War I. The court held the death was within such war clause and denied recovery.

The case at bar is what is known as a result case, as distinguished from one involving the status. Various courts have held that the war clause is not applicable where death is due to some cause common to both military service and civilian life. But, as stated, the case at bar is one which is peculiar to military service, or to war, or is an incident of war. There are instances

where the war clause has been held not operative, but in our examination of the cases cited, as well as others, the clause in question has been held to exempt the insurer from liability. In many cases where recovery was permitted death was attributed to causes which affected both civilians and those engaged in military service alike, such as pneumonia and various accidents common to all; and also in some cases the clause has been held not operative on account of the wording of the particular policy, such as the court's interpretation of the word "engaged." The subject is fully discussed in the annotation in 137 A. L. R. 1263, and cases cited therein.

Here deceased came to his death riding in an army tank as a member of a crew in training for war, which is not a cause of death common to civilian life. A clause excluding liability in the event death results directly or indirectly from war, we are satisfied, must apply to a member of the military forces, a member of an army tank crew, on active duty, while in the line of duty, acting under orders from superior officers and carrying out a military assignment as a part of his training during the prosecution of war. The death of insured was the direct result of an act incident to war. The least that could be said about a death under such circumstances would be that it was an indirect result and the exemption of liability provided by the war clause would apply. We can conceive of no part of a soldier's duties while an active member of a military force, except actual combat, which is more directly traceable to war than the performance of the duties in which deceased was engaged at the time of the fatal accident. This would be the common understanding of an injury caused by war and it was so reported by insured's superior officer. It was a result of war, and as such the exclusionary clause applied. The district court was correct in ruling that it did so apply. Double indemnity under the terms of the policy cannot be allowed. The cause should be, and is, affirmed.—Affirmed.

All JUSTICES concur.