Selenack, Admr., Appellant, *v.* Prudential
Insurance Co. of America.

Argued October 4, 1946. Before BALDRIGE, P. J.,
RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Ralph S. Croskey,* with him *Frederick L. Raker* and
*Croskey & Edwards,* for appellant.

*Kendall H. Shoyer,* with him *Shoyer, Rosenberger,
Highley & Burns,* for appellee.

OPINION BY HIRT, J., January 17, 1947:

Defendant wrote two policies of insurance, in stated
amounts, on the life of Joseph S. Selenack, plaintiff's
decedent. In each of the contracts defendant assumed
double liability in the event of death by accidental
means. Insured died from accident. The question here
is whether his estate is entitled to recover the addi-
tional payments notwithstanding exceptions on the right
of recovery imposed by the terms of the policies. The
trial judge directed a verdict for defendant. It is con-
tended that the lower court erred in refusing to enter
judgment in favor of insured's estate for the additional
insurance, notwithstanding the verdict.

There was no dispute as to the facts; the question is
wholly of law. Decedent was a corporal in the army
of the United States, then at war with the Axis nations.
He was stationed at Fort Knox, Kentucky, and was in
command of an armored M-4 tank. On May 31, 1943,

about ten tanks were engaged in a demonstration, 35 miles from the post. On their return, they were traveling in column on a public highway. Decedent was in the turret of one of the tanks supervising its operation. To avoid an approaching school bus the tank was driven off the cartway. The berm was soft and gave way under the tank. Selenack was killed instantly when the tank overturned and slid down the embankment at the side of the road. Defendant admitted that "the insured died as a result of having sustained . . . bodily injuries solely through external, violent, and accidental means, and while said policies were in force." These general conditions, essential to recovery of double indemnity, were fulfilled, but the lower court found for defendant because of the limitation on the defendant's liability, stated in both of the policies as follows: "No Accidental Death Benefit will be paid if the death of the Insured resulted . . . from having been engaged in military or naval service in time of war." The court found that the exception barred recovery because the fatal accident *resulted* from military service while decedent was performing duties required of him in such service, in time of war. It is plaintiff's contention that the above exclusion clause of the policies refers "only to combatant service" and that defendant, therefore, is liable for the additional death benefits.

The validity of a provision in a life or accident contract, entirely releasing, or restricting the liability of an insurer under the policy because of military service of the insured, is almost universally recognized. Annotation, 137 A.L.R. 1263. In general, such clauses are not against public policy. *Bending v. Metropolitan Life Ins. Co.,* 74 Ohio App. 182, 58 N. E. 2d 71.

There is apparent unanimity in the decisions, as appellant points out, in the so-called *status* type of clauses excluding the payment of benefits on the death of an insured while serving in any branch of the United

States Army or Navy. *Miller v. Illinois Bankers' Life Ass'n.,* 138 Ark. 442, 212 S. W. 310; *McQueen v. Sovereign Camp,* 115 S. C. 411, 106 S. E. 32; *Lindsey v. Life & Casualty Ins. Co.,* 70 Ga. App. 190, 27 S. E. 2d 877. The divergence of view among courts occurs in construing clauses intended to relieve the insurer from liability, not generally because of status, but e. g., while the insured is *engaged* in military service or for death *resulting* from such service. The cases reviewed in the above annotation of A. L. R. indicate the difference of judicial view in construing similar if not identical language in clauses of these types. In the so-called *resulting* type of exclusion clauses, with which we are concerned in the present appeal, there should be little doubt that death *resulting* from military service, during the period of such service, relieves the insurer from liability. Cf. *La Rue v. Kansas Mut. Life Ins. Co.,* 68 Kan. 539, 75 P. 494. But there is difference of opinion among courts even on that question. In *Eggena v. New York Life Ins. Co.,* (Iowa), 18 N. W. 2d 530, the policy provided that "Double Indemnity Benefit shall not be payable if the Insured's death resulted, directly or indirectly, from . . . war or any act incident thereto . . ." The insured in that case was in military service and was a member of a tank crew acting under competent orders, in a routine training convoy. The tank turned into a bridge railing to avoid oncoming traffic and fell to the stream bed below, causing the death of the insured. The court held, and properly so, that the death of insured was the direct result of an act incident to war and recovery was denied on that ground. But in *Hooker v. New York Life Ins. Co.,* (D.C. Ill.), 66 F. Supp. 313, a district court of Illinois allowed recovery notwithstanding an exclusion clause in the policy identical with that in the *Eggena* case. The insured in that case, a member of the United States Marine Corps Reserve, in military service in New

Zealand, was acting as an "enemy" scout, during maneuvers. He was "captured, and, in attempting to 'escape', jumped over the edge of a cliff, concealed by bushes", and was killed. It was held that the exception included "besides combat casualties, only such other deaths as result from activities in immediate support of operations against the enemy or from enemy action not in combat . . .", and that, "since the death of insured in this case occurred in the course of routine training, it did not result from an act incident to war." Certainly if a doubt exists as to the meaning of language used in an insurance policy, the doubt should be resolved in favor of the insured. *Levinton v. Ohio Farmers Ins. Co.*, 267 Pa. 448, 110 A. 295. But the result in the *Hooker* case (and in others where recovery was similarly allowed, against the clear intent of plain excluding language) suggests that "the court created the 'doubt' by a species of argument . . . and then, having found the 'doubt', resolved it 'in favor of the insured' ": *Urian v. Scranton Life Ins. Co.*, 310 Pa. 144, 151, 165 A. 21.

The language of the exclusion clause in the present policies, has not been construed by our appellate courts. But it is clear and unambiguous and cannot be construed otherwise. *Urian v. Scranton Life Ins. Co.*, supra. The policies here, were primarily life contracts and the double indemnity feature was added to them. Whether the insured paid additional premiums for the coverage, or, as the defendant asserts, it added accident insurance to all of its life policies of this class, gratuitously, is of no moment. What is important is that defendant limited its liability by excluding death *resulting* from military or naval service in time of war. There is good reason for an insurer to differentiate military service in time of war, from such service in peacetime, and to assume liability for death from accident in the latter service and exclude it in the former. One is much more liable to injury and death, by accidental means, from military training and

other service in time of war than from like service at other times. The steppped-up tempo of the intensive effort in time of war increases the risk, not only on aviation fields but in the training of amphibian or landing forces and others, including the crews of armored tanks. The training of officers to command such tanks was essential to the war effort. Insured was engaged in military service while in command of the tank, driven in convoy, though on a routine training maneuver. The parties had the right to contract against the increased hazards of military service in time of war, without affecting insurer's liability for accidental benefits from death in like service in time of peace. There is nothing in the clear language of the clause which will permit a construction limiting the exclusion to actual combat service. Death *resulting from military service in time of war* comprehends death in actual combat but is not so restricted as to exclude death under other circumstances, if actually resulting from military service, in time of war.

Judgment affirmed.