## SMITH v. NEW YORK LIFE INS. CO.

Common Pleas Court, Franklin County.

No. 169749.   Decided February 6, 1948.

Horace Troop, Westerville, for plaintiff.
Arnold, Wright, Purpus, Morris & Arnold, Columbus, for defendant.

## OPINION

By REYNOLDS, J.

In this action plaintiff is seeking to recover from defendant company the sum of $1,000 on an insurance policy, issued by defendant company, on her husband, in the sum of $1,000 with a provision that the sum of $2,000 would be paid in case the death of the insured resulted directly and independently of all other causes, from bodily injury effected solely through external, violent and accidental means and occurred within 90 days after such injury, subject to certain exceptions, among which is the following: "Double indemnity shall not be payable if the insured's death resulted from * * * war or any act incident thereto * * *"

After setting out the terms of the policy, the petition alleges that while the policy was in full force and effect the insured met his death by accidental means in an explosion and fire at The Kilgore Mfg. Co. at Westerville, Ohio.

Defendant paid $1,000 on the policy in question, and the plaintiff is seeking to recover $1,000 additional by reason of the policy provisions aforesaid.

The answer alleges that the death of the insured resulted as an incident of war, in that it was occasioned by reason of an explosion at the Plant of The Kilgore Mfg. Co. where the insured was working, and in which plant there was being manufactured high explosive target bombs for the use of the U. S. Government in the prosecution of war, and that there is no further liability on the policy.

Upon the trial a jury was waived, and the case was submitted to the Court on an agreed statement of facts as follows:

"1. Prior to the outbreak of World War II and until March, 1942, the Kilgore Manufacturing Company operated a plant at Westerville, Ohio, at which plant said company manufactured toy cap pistols and caps for use in such pistols. In March, 1942, said company converted entirely to war work and thereafter and during 1945 was engaged exclusively in the manufacture of various kinds of incendiary bombs, flares and explosive bombs known as target bombs for use by the armed forces of the United States in connection with bombing and other similar military and naval activities in World World II.

"2. The target bombs hereinabove referred to each weighed approximately 250 lbs. and consisted of a detonator, powder

charges and four kinds of inflammable flare materials and were dropped on targets on bombing missions.

"3. Prior to February 26, 1945, Harold W. Smith, the insured, was employed by The Jaeger Machine Company of Columbus, Ohio, and on said date entered the employment of said Kilgore Manufacturing Company. His duties and the work performed by him from February 26th to and including March 2, 1945, the date of his death, consisted of carrying the explosive and flare materials used in the target bombs to a room, known as the loading room, where the target bombs were filled with said materials, and also of miscellaneous tasks in connection with the loading of the target bombs.

"4. The building in which the loading room was located had been used prior to March, 1942, by the Kilgore Manufacturing Company for the manufacture of the caps as referred to above. When said company began to manufacture said target bombs, the machinery used in the manufacture of said caps was removed from said building and the equipment used in connection with the loading of the target bombs was installed. No other changes were made in connection with said building.

"5. On March 2, 1945, while the loading of target bombs was in process in the loading room, the explosive materials therein exploded from an unknown cause and the insured, who was in the loading room at the time engaged in the performance of his said duties, was killed as a result of the explosion."

The only question necessary to a decision is whether the death of the insured was the result of or an incident of war.

It is the contention of plaintiff that the term "incident thereto" as used in the policy is to be interpreted as an act involving combat or some act immediately incident to an act of combat, and that since the term itself is ambiguous it must be construed against the insurer.

This latter is of course true if the premise, namely that the term is ambiguous, is true. Among the cases relied upon by plaintiff as supporting the claimed meaning of "incident thereto" is that of Johnson v. Mutual Life Insurance Co., 154 Ga. 653, 115 S. E. 14, where the following was held: "Under a policy in which the insurer agrees to pay double indemnity in case of the death of the insured resulting from bodily injury effected solely through external, violent, and accidental means, a provision, 'that this double indemnity shall not be payable in the event of the insured's death as a result of military or naval service in time of war, * * * nor

if such death be caused directly or indirectly, wholly or partly, by * * * war, or any act incident thereto,' will not relieve the insurer from liability, when the death of insured did not result from his service in the military in time of war, or where his death was not caused directly or indirectly, wholly or partly, by war, or by some act incident thereto. When the insured was killed on June 27, 1919, while in the military service of the United States, and while he was being transported on a troop train from Ft. Oglethorpe, Ga., to San Francisco, Cal., to be embarked at the latter place for Honolulu, to join other military forces of the United States at that place, his death resulting from his being struck by the girder of an overhead bridge over which such trooptrain was passing, near Granger, Wyo., the death of the insured under these circumstances would not exempt the insurer from the payment of the double indemnity, under the above provision of the policy under which his life was insured; especially where it was not shown by the insurer that the death of the insured was the result of his military service, or was caused by war, or an act incident thereto, and when it appears that his death was due to a fatality which befalls soldier and civilian alike."

The difficulty we find in attaching any weight to that decision in connection with the present case is that at the time the insured was killed, which was June, 1919, the war was over and the insured was neither engaged in war nor any act incident thereto, and the limitation in the policy applied only "in time of war."

In its decision the Court said, "His death was not due to war, nor to some act incident thereto. **It was not shown that he was even being transported to the scene of any war. So far as appears, it was the transportation of troops upon a peace footing.**" (Emphasis ours.)

Why the Court made such an observation is difficult to understand. It is clear that the troop movement in which the insured was engaged was a peacetime movement, of which the Court should have taken judicial notice. It was, therefore, clear that the death did not occur during war time, so that the exception in the policy had no application, and the decision can in no way be persuasive of a liability in the instant case.

The Court seems to have tried to make a simple question appear difficult.

Counsel for plaintiff take the position that the exceptions must be drawn close to the battle front and are not intended

to include civilian workmen. This ignores the express provisions of the policy. The exemption is not confined to those in military service nor to the locale or vicinity of battle. The term war has a far broader meaning than combat or battle and relates to civilians, soldiers and sailors alike and to any place irrespective of its proximity to or distance from actual conflict.

The reasoning indulged by counsel and some of our courts take into consideration only the insurer and the particular insured and dwell primarily on the fact that the exceptional provisions are solely for the benefit of the insurer.

This is unfortunate as it misses another purpose of the exceptions which should be considered as relating to policy holders in general. Rates of life insurance premiums are based upon experiences of life expectations, figured on ordinary conditions. Experience teaches, with great accuracy, how many persons out of a given number and a given age will die in a given time, and also the percentage who will meet violent deaths.

The premiums, based on these experiences are calculated so that insurers will be able to pay the beneficiaries, when death occurs, but if there is an unprecedented increase in the number of deaths it could well be that an insurer would not be able to meet its obligations, so that it is manifest that policy holders are themselves vitally interested in the financial responsibility of the insurer.

To guard against possible emergencies increasing hazards, provisions are inserted in insurance policies which are calculated to preserve the insurer's ability to meet its obligations, thus protecting its policy holders as well as itself, and enabling it to maintain premium rates on a reasonable basis. Thus, we find that double indemnity will not be paid in case of violent death from self destruction, from taking poison or inhaling gas either voluntarily or otherwise, from committing an assault or felony, from engaging in riot or insurrection, from participating in aviation, as well as from war or any act incident thereto. It is at once apparent that all of these conditions are conducive to a marked increase in mortality, and are in the main of such a nature that there is no basis or method whereby a premium rate could be fixed warranting the coverage for such losses which would be actuarily sound. Therefore the exceptions.

Is the term "incident to war" an ambiguous term as plaintiff contends? One of the definitions of the word "incident" as given in standard dictionaries is "apt to occur". It would

therefore, seem that those things which are "apt to occur", and do occur as a result of war and which do not occur otherwise are incidents of war.

Thus we find in the decisions that Courts have held that one killed in army training in the United States in a tank explosion, an officer killed in an airplane crash in the United States, a seaman lost when a destroyer convoying merchant ships was torpedoed on Oct. 30, 1941 before the U. S. was at war, a purser on a U. S. Merchant ship, carrying a war cargo of cotton, oil etc. which collided with another ship in a. convoy, resulting in his death, that death was incident to war and double indemnity could not be collected.

In the case of Eggena v. New York Life Ins. Co., 236 Iowa 262, 18 N. W. 2d 530, the 6th syllabus reads as follows: "When the insured, a member of army tank crew in training in wartime, was fatally injured when tank fell from bridge while proceeding in routine training convoy to bivouac area, death resulted directly or indirectly from 'war or act incident thereto' within life policy excluding double indemnity therefor."

In its opinion the Court said: "Insured's death was not the result of disease but did occur while in the military service and resulted directly from the carrying on of an act which was an essential part of the prosecution of war. **It was not** an act incident to anything **but war.**" (Emphasis ours.)

The Court then quotes from Stankers v. New York Life Ins. Co. 312 Mass. 366, 44 N. E. (2d) 687, 688, as follows: "As in the case of any other contract, the words of an insurance policy, in the absence of ambiguity, must be given their usual and ordinary meaning. The term 'war' is not limited,. restricted or modified by anything appearing in the policy. It refers to no particular type or kind of war, but applies in general to every situation that ordinary people would commonly regard as war. There is nothing in the policy that indicates that the word was used in any vague, indefinite or ambiguous sense. A policy of insurance whose provisions are plainly and definitely expressed in appropriate language must be enforced in accordance with its terms."

And then observed as follows: "The court held, citing cases, that, although the United States was not at that time at war, the death of insured arose directly or indirectly from war and was not a risk covered by the double indemnity provisions of the policy and judgment was rendered for defendant. This court has held to the rule quoted above in the construction of exemption clauses. See Field v. Southern Surety Co., supra [211 Iowa 1239, 235 N. W. 571], and cases

cited: Swanson v. Provident Insurance Co., supra [194 Iowa 7, 188 N. W. 677], **In the exemption clause in the present case, following the general rule, there is no need for construction since there is nothing ambiguous about its wording."** (Emphasis ours.)

The wording of the policy in that case is identical with the provisions of the instant case and this court agrees with the statement of the court in that case that the wording is not ambiguous, so that the premise from which counsel argue that the terms of the policy are ambiguous and the policy must be construed against defendant fails and the conclusion therefore necessarily fails. The argument, that since there have been several cases, involving the same or similar provisions in the insurance policies, this is evidence of the ambiguity of the meaning of the words used, is not sound. An examination of the various facts in those cases discloses that the difficulties did not arise from an interpretation of the policy provisions but in the relation of the particular facts to those provisions.

Certainly there can be but little argument, but that the raising, training, equipping and transportation of troops, and the transporting, either by land, sea or water, of munitions of war for use in the waging of an existing war, are incidents of that war, since they are acts which are not incident to anything but war. Is the actual manufacture and handling of high explosives designed exclusively for use in the same war to be considered in any other light than that the same constitute acts incident to war? As stated in the case of Eggena v. New York Life Insurance Co., supra, such acts are incident to nothing other than war, and without war would not occur.

There is a wide difference between making and handling high explosives, the only use of which is for the prosecution of a war and the farmer who raises food, which ultimately may be used to feed the countries' soldiers, or cotton which may be used in the manufacture of deadly explosives for use in the prosecution of the war. Such acts may be incident to hundreds of activities other than war.

In the instant case the insured was directly engaged in the preparation of high explosives for exclusive use in the prosecution of the war in which this country was engaged. But for the war he would not have been so engaged, so that the conclusion must be reached that he was engaged in an act incident to war and the explosion which caused his death was likewise an act incident to war and that the provision in the policy for payment of double liability does

not apply since the facts of insured's death came within the plain provisions of the exceptions.

There is no question but that "A provision in life policy affording double indemnity unless death results from war or any act incident thereto is valid." See Eggena v. Insurance Co., supra. Nor is the application of the exemption to civilian workers contrary to public policy as counsel argue. On the contrary it is in the interests of public policy since as heretofore pointed out it affords a protection to the insurer against unusual hazards which are so uncertain as to make it difficult or impossible to anticipate by way of increased consideration for the risk, and protects other policy holders whose security might well be jeopardized were the insurer obligated to pay for losses due to increased hazards for which it has not received commensurate consideration.

The face of the policy namely $1,000 has been paid. The extra amount sought to be recovered is payable upon the happening of a particular event, with certain exceptions.

The Court has concluded that the death of the insured comes within the exceptions, that is, that it resulted from an act incident to war and that there is no liability on the part of defendant to pay the double indemnity. Judgment is therefore entered for defendant for costs.