BOBBY JOE INGRAM *v.* CONTINENTAL CASUALTY COMPANY

5-5186                                        451 S. W. 2d 177

Opinion delivered March 16, 1970

*G. Leroy Blankenship,* for appellant.

*G. D. Walker,* for appellee.

J. Fred Jones, Justice. Bobby Joe Ingram sued Continental Casualty Company in the Lawrence County Circuit Court to recover on a health and accident insurance policy issued to Ingram by Continental. Continental denied liability because of a military exclusion clause in the policy and its motion for summary judgment was granted. On appeal to this court Ingram relies on the following points for reversal:

"The trial court erred as a matter of law in granting summary judgment to the defendant.

The trial court erred in finding that an exclusion of loss 'caused by or resulting from * * * service in the armed forces of any country' stated in the policy precludes recovery by the plaintiff in this case.

The trial court erred in granting the defendant a summary judgment for the reason that there is a question of material fact which is in dispute as to whether the risk of an accident such as tripping and falling as in this case is a risk peculiar to military service."

Ingram was a railroad employee when he purchased the policy and he was also a member of the Arkansas National Guard. Two months after he purchased the policy he was called to National Guard duty and while performing his assigned duties as a cook, he was injured. Ingram had supervised the setting up of a cook tent, and as he was carrying crates of milk from a truck to the tent, he stepped back to allow another soldier to pass in front of him, and sustained his injury when he tripped over the tent ropes and fell to the ground on his back. Ingram sustained fractures to the vertebrae in his spine as a result of the fall and he required hospitalization and surgery in connection with his injury.

The clause in the policy under which Continental denied coverage reads as follows:

> "This policy does not cover any loss, fatal, or non-fatal, caused by or resulting from * * * service in the armed forces of any country."

The parties agree that the exclusionary clause in the policy is a "result" clause as distinguished from a "status" clause. In other words, they agree that the exclusion is effective when the injury occurs as a *result* of the insured's service in the armed forces, and that the exclusion is not effective merely because the insured *is a member of* the armed forces. To exclude the coverage the insured must sustain the loss not merely *while* he is a member of the armed forces, but *because* he is a member of the armed forces. The loss must be service connected before it is excluded from the coverage under the policy. The appellant's status as a member of the armed forces at the time of his injury does not appear to be questioned, nor is it questioned that the injury occurred while the appellant was in the course of his duties as a member of the armed forces. The question then, on all three points relied on by the appellant, is whether appellant's loss was *caused by,* or *resulted from,* his service in the armed forces.

The appellant contends that his injury and resulting loss were not caused by, and did not result from, his service in the armed forces. The appellee, of course, makes the opposite contention. Both the appellant and the appellee have cited several cases in support of their respective contentions, but most of the cases cited are distinguishable from each other and from the case at bar on the facts as to how the loss occurred and the policy coverage or exclusion. In some of the cases cited by the appellant the courts had no difficulty in determining that coverage was not excluded. In *Benham* v. *American Central Life Ins. Co.,* 140 Ark. 612, 217 S. W. 462, the insured died from influenza while in the armed forces and the exclusion being a "result" rather than a "status" clause, it was held that the exclusion did not apply. The same decision was reached in *Gorder* v. *Lincoln National Life Ins. Co.,* 180 N. W.

514, where the insured died from pneumonia contracted on a troop ship en route to England. In *Nutt* v. *Security Life Ins. Co.*, 142 Ark. 29, 218 S. W. 675, the insured also died from influenza while stationed at Camp Pike during World War I. In *Nutt* as in *Benham, supra* this court, in effect, held that the word "engaged" as used in the exclusionary clause denotes action and not disease.

The appellee cites cases in which the courts had no difficulty in holding the exclusions applicable under the facts and policy provisions of the particular cases. In the 1945 case of *Bologna* v. *New York Life Ins. Co.*, 40 So. 2d 48, the Louisiana Court denied payment under a clause which provided that double indemnity should not be payable,

> "if the insured's death resulted, directly or indirectly, from * * * war or any act incident thereto * * *."

In that case the insured was lost at sea when he dived overboard during a fire, following a collision between a merchant ship on which he was a seaman, and another merchant vessel loaded with gasoline. The two vessels were traveling in convoy under naval escort in time of war.

In *Selenack* v. *Prudential Ins. Co. of America*, 50 A. 2d 736, a double indemnity insurance policy contained a provision as follows:

> "No accidental Death Benefit will be paid if the death of the Insured resulted * * * from having been engaged in military or naval service in time of war."

The insured was killed while commanding an M-4 tank returning to the post from maneuvers. The tank turned over when it ran off the road to avoid an approaching school bus it was meeting. In affirming the trial court's judgment in favor of Prudential, the appellate court said:

"There is nothing in the clear language of the clause which will permit a construction limiting the exclusion to actual combat service. Death *resulting from military service in time of war* comprehends death in actual combat but is not so restricted as to exclude death under other circumstances, if actually resulting from military service, in time of war."

The same result was reached on very similar facts in *Eggena* v. *New York Life Ins. Co.*, 18 N. W. 2d 530. In *Goodrich* v. *John Hancock Mut. Life Ins. Co. of Boston*, 234 N. Y. S. 2d 587, the insured, while a soldier in Korea, was killed when a member of his company accidentally discharged a carbine while cleaning it. The exclusionary clause was held applicable.

In Couch on Insurance, 2d, § 41:725, is found the following:

"In a number of cases a distinction has been suggested, either expressly or by inference, between injuries not peculiar to the military service but equally likely to occur in civilian life, and those which are the result of military service or war. * * * If the clause is considered a result clause, the insurance company is excused from paying the face value of the policy or double indemnity, as the case may be, only if the insured died from causes peculiar to military service."

This same rule is stated in 36 A. L. R. 2d 1018.

We now examine some of the cases which we consider nearest in point with the case at bar as to cause of loss and policy exclusion. The appellant cites, and seems to rely heavily on, *Johnson* v. *Mutual Life Ins. Co. of New York*, 115 S. E. 14, which was a World War I case involving a double indemnity clause in an insurance policy containing a provision as follows:

"Provided, however, that this double indemnity

shall not be payable in the event of the insured's death as a result of military or naval service in time of war, * * * nor if such death be caused directly or indirectly, wholly or partly by * * * war, or any act incident thereto, * * * or from police duty in any military, naval or police organization."

The insured, a member of the armed forces, was struck and killed by a bridge girder while standing on a step, or while leaning out a window of a troop train enroute from his training base, Fort Oglethorpe, Georgia, to his port of embarkation, San Francisco, California. In holding the insurance company liable under the policy, the court said:

"If the insurer had intended that it was not to be liable for this double indemnity if the insured died while in the military service from any cause whatsoever, it would have been an easy matter to have written such a stipulation in the policy. Such a provision would have made the insured's status in the military service, at the time he met his death, and not the cause of his death, the ground of the insurer's exemption from liability. But the insurer, by this stipulation in this policy, made the cause of the death of the insured, and not his status as a soldier, the thing which would relieve it from the payment of this double indemnity. This is clearly shown by the language employed. The words used make death, not in, but as a result of, military or naval service in time of war, or caused by war, or some act incident thereto, the condition which would free the company from this double indemnity. This language is pregnant with cause as the exemption from liability in this matter. If the death of the insured was not the result of military service in time of war, or if it was not caused directly or indirectly, wholly or partly, by war, or some act incident thereto, the insurer would be liable for this double indemnity, although the insured died while in the military service of his country."

In all practical aspects, except as to time and results, the case of *Hooker* v. *New York Life Ins. Co.,* 161 F. 2d 853, was very similar to *Johnson* v. *Mutual Life, supra.* In *Hooker* the beneficiary was awarded a summary judgment by the trial court on a double indemnity provision of an insurance policy providing as follows:

> "* * * upon receipt of due proof * * * that the death of the insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means * * *; provided, however, that such double indemnity benefit shall not be payable if the insured's death resulted, directly or indirectly, from * * * war or any act incident thereto."

At the time of his death in 1943, Hooker was a captain in the United States Marines and was stationed in New Zealand where he was engaged in war training maneuvers over an area of several miles. On the second or third day of maneuvers the insured, while playing the role of a scout, was captured by the opposing "enemy" team and was turned over to six members of the company to be taken as a "prisoner" to their command post. On their return trip, while the patrol had stopped to rest, the insured, taking his guard by surprise, made a break to escape and in doing so he jumped a fence and crashed through some bushes bordering a deep ravine which he did not see. He fell to the bottom of the cliff or ravine and subsequently died from the injuries he sustained. In reversing the judgment of the trial court, the appellate court said:

> "The insured was in New Zealand because of war and his activities were because of war and a part of war. The activities in which he was engaged and which resulted in his death were in no wise common to a civilian. Certainly such activities must have been incident to something. If not war, what was it? As we view the matter, his death was clearly an incident of war. The plain, un-

ambiguous language of the exclusion clause as applied to the facts of the instant situation requires a reversal of the judgment."

In the 1945 Ohio case of *Smith* v. *New York Life Ins. Co.*, 86 N. E. 2d 340, double indemnity was denied under a policy which provided:

"Double indemnity shall not be payable if the insured's death resulted from * * * war or any act incident thereto * * *."

The insured was employed in a defense plant which was engaged exclusively in the manufacture of incendiary bombs. He was killed when one of the bombs exploded in the process of being loaded.

In *Neidle* v. *Prudential Ins. Co. of America*, 85 N. E. 2d 614, a claim for double indemnity was denied because of an exclusion in the policy where the insured's "death resulted * * * from participating * * * in military or naval service in time of war." The insured was a sergeant in the army and was assigned to army intelligence. As a part of his duties he interviewed captured enemy soldiers at forward areas, and on October 7, 1944, he was returning from such a mission to his headquarters in Florence, Italy, when the jeep in which he and other military personnel were traveling collided with an army ammunition truck and he was killed. In affirming the trial court's holding that the insured was participating in military service in time of war within the exclusionary clause of the policy, the court said:

"The case would perhaps be different if, for instance, death resulted while the insured, though in military service, met death while on a furlough, under conditions having nothing to do with the war effort. It is sufficient for present purposes to say that, since Rosenwald was on a military mission in a military situation when he died, his death

resulted from participating in military service in time of war."

In the case at bar the material facts are not in controversy and we are unable to say that the trial court erred in granting the appellee's motion for summary judgment. The appellant argues that the military exclusion in the policy does not "exclude coverage while in military service, nor while on a military reservation, while in uniform, while carrying government milk or while drawing government pay." It is quite true that the policy does not contain such specifically named exclusions, but neither does the policy exclude coverage while operating a tank, digging a foxhole, directing a patrol or assaulting the enemy. The policy does exclude coverage on any loss caused by, or resulting from, service in the armed forces. The appellant also argues that anyone of the general public may trip and fall over a tent rope while carrying a case of milk. We are forced to the conclusion, however, that no such accident would befall a member of the general public unless he has occasion to be carrying a case of milk near an erected tent on which tent ropes are used, and we cannot escape the fact that the appellant's service as cook, while in the armed forces, furnished him just such occasion.

We are not unmindful that the appellee prepared the policy and could have been more specific in the exclusion provision. As a matter of fact the appellee could have made the provision a "status" exclusion, but to have done so the coverage would have been excluded while in town, or while traveling on leave. We have no reason to assume that such was the intent of the parties to the insurance contract. We conclude, therefore, that the appellant, in this particular case, would not have stepped backward and tripped over a tent rope while carrying a case of milk, had he not been serving in the armed forces. Consequently, we agree with the trial court that appellant's loss was caused by, or resulted from, his service as cook in the

armed forces while on assignment in the Arkansas National Guard.

The judgment is affirmed.